**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**CORPUS CHRISTI DIVISION**

| | | |
|---|---|---|
| **ARGO (NO. 604) LIMITED** | § | |
|     **Plaintiff** | § | |
| | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO. _____** |
| | § | |
| | § | |
| **ROCKPORT ASSOCIATES I, LLC; AND** | § | |
| **ROCKPORT COASTAL CARE CENTER** | § | |
|     **Defendants** | § | |

**ORIGINAL COMPLAINT TO COMPEL ARBITRATION**

Plaintiff, Argo (No. 604) Limited (hereinafter "Plaintiff" or "Argo"), petitions this Court to compel arbitration in this matter and shows the Court the following:

**PRELIMINARY STATEMENT**

1.    This matter involves the arbitration of disputes arising under a commercial property insurance policy, Policy No. B1263EW0004816 (the "Policy"), issued by Plaintiff to Defendants, Rockport Associates I, LLC and Rockport Coastal Care Center (collectively, "Defendants" or "Insureds"). A dispute has arisen between the parties regarding the amount of loss under the Policy and the allocation of proceeds between the Defendants/Insureds, among other things.

2.    The Policy contains a valid arbitration clause that falls under the Convention on the Recognition and Enforcement of Foreign Arbitral Awards, (also known as the "Convention"). Plaintiff invoked the arbitration provision in the Policy and named Andrew Lehrman as its arbitrator on or about March 27, 2019. Defendant, Rockport Coastal Care, joined in the designation on its own behalf, only. To date, however, Defendant Rockport Associates I, LLC (the insured-landlord) has refused to appoint an arbitrator. Despite Plaintiff's efforts,

progress toward arbitration has completely stalled. Accordingly, Plaintiff, on its own behalf and on behalf of the subscribers to the remaining percentages of the risk, respectfully asks that this Court compel arbitration of all disputes among the parties arising under the Policy.

3.    Plaintiff reserves all rights under the Policy and applicable law.

## PARTIES

4.    Plaintiff Argo (No. 604) Limited is a capital provider to Syndicate 1200, which is one of many syndicates that transact business in the marketplace known as Lloyd's of London. Syndicate 1200 underwrote 15% of the policy of insurance at issue in this action, and thus subscribed to 15% of the risk on that policy. Argo is incorporated, registered, and with its principal place of business in London, England (United Kingdom). A federal court action brought by Argo is proper and binding on all subscribing syndicates as though they were parties to the action.  *See Corfield v. Dallas Glen Hills, LP*, 355 F.3d 853, 864 (5th Cir. 2003); *Underwriters at Lloyd's, London v. Osting-Schwinn*, 613 F.3d 1079, 1091-92 (11th Cir. 2010) (*dicta* agreeing with and endorsing holdings in *Corfield* and similar cases).

5.    Defendant Rockport Coastal Care (the insured-tenant) is a Texas corporation with its principal place of business located in Rockport, Texas. Defendant Rockport Coastal Care may be served via its registered agent for service of process, Bradley S. McDonald, at 1004 S. Young Street, Rockport, Texas 78382.

6.    Defendant Rockport Associates I, LLC (the insured-landlord) is a Texas limited liability company with its principal place of business in Northbrook, Illinois. Defendant Rockport Associates I, LLC may be served through its registered agent for service of process, Randyl Meigs, at 777 Main St., Ste. 1300, Fort Worth, Texas 76102.

## JURISDICTION AND VENUE

7.     The Policy contains a valid arbitration clause that falls under the Convention on the Recognition and Enforcement of Foreign Arbitral Awards, (also known as the "Convention"). Therefore, this Court has original jurisdiction pursuant to 9 U.S.C. §§ 202, 203 and 205 and 28 U.S.C. § 1331.

8.     Venue is proper in the United States District Court for the Southern District of Texas, Corpus Christi Division because a Defendant either resides or has its principal place of business in this District.

## GENERAL ALLEGATIONS

9.     Commercial property policy no. B1263EW0004816 was issued to Defendants for the period November 1, 2016 – November 1, 2017.   Subject to certain terms, conditions, limitations and exclusions, the Policy provided commercial property coverage to a commercial building located at 1004 Young Street, Rockport, Texas 78382 ( "Insured Property").  A true and correct copy of the Policy is attached hereto as **Exhibit A.**

10.     Defendants submitted a claim on or about September 5, 2017 under the Policy for damage to the Insured Property that allegedly occurred on or about August 25, 2017 as a result of Hurricane Harvey. The claim had three coverage components: (1) building damage, (2) business personal property, and (3) business interruption.

11.     To date, Plaintiff and the other insurers have issued claim payments totaling $1,519,415.45, including (1) $500,000 as a general advance for building damage, (2) $119,415.45 ACV for business personal property, and (3) $900,000 (policy limit) for business interruption.

12.     This matter involves (1) a dispute between Plaintiff and Defendant Rockport

Associates I, LLC (the insured-landlord) regarding the claim for building damage, (2) a dispute between Plaintiff and Defendant Rockport Coastal Care (the insured-tenant) regarding the inclusion of a leased copier in the business personal property claim, and (3) a dispute between the two Defendants/Insureds regarding the allocation of claim payments for business interruption coverage.

13.     The Policy provides for arbitration where the parties are unable to agree "regarding any aspect of this Policy." The Policy states, in relevant part, as follows:

**LOSS CONDITIONS**

\*\*\*

**ARBITRATION**

> If the Insured and Underwriters fail to agree in whole or in part regarding any aspect of this Policy, each party shall, within ten (10) days after the demand in writing by either party, appoint a competent and disinterested arbitrator and the two chosen shall before commencing the arbitration select a competent and disinterested umpire. The arbitrators together shall determine such matters in which the Insured and the Underwriters shall so fail to agree and shall make an award thereon, and if they fail to agree, they will submit their differences to the umpire and the award in writing of any two, duly verified, shall determine the same.
>
> The Parties to such arbitration shall pay the arbitrators respectively appointed by them and bear equally the expenses of the arbitration and the charges of the umpire.

**Exhibit A.**

14.     On or about March 27, 2019, Plaintiff invoked the Policy's arbitration provision, appointed Andrew Lehrman as arbitrator, and requested that Defendants communicate their selection of arbitration within ten days, as required by the Policy. *See* **Exhibit B**. Defendant, Rockport Coastal Care, joined in appointing Mr. Lehrman as arbitrator. To date, however, Defendant Rockport Associates I, LLC has refused to appoint an arbitrator.

15.     As a result, the parties have reached an impasse and must now seek the intervention of this Honorable Court in order to move this matter toward arbitration and

ultimately reach a final resolution of this stagnated Hurricane Harvey claim.

## PETITION TO COMPEL ARBITRATION

16.     Pursuant to 9 U.S.C. § 206, "[a] court having jurisdiction under this chapter may direct that arbitration be held in accordance with the agreement at any place therein provided for, whether that place is within or without the United States. Such court may also appoint arbitrators in accordance with the provisions of the agreement." Plaintiff hereby respectfully petitions this Honorable Court to direct that arbitration be held in accordance with the arbitration agreement found in the Policy, which is quoted above in ¶ 13 and incorporated herein by reference.

17.     In keeping with the Policy's terms, Plaintiff further requests that this Court direct the parties to advise one another of their selection of arbitrator within ten days of this Court issuing the order requested in ¶ 16 above, which is incorporated herein by reference.

## CONCLUSION AND PRAYER

18.     Despite a thorough investigation and adjustment process, the passage of over two years, and claim payments issued in excess of one-point-five-million dollars, the insurance claim underlying this matter continues to languish painfully despite the parties' best efforts to work toward final resolution. One long-outstanding issue is the allocation of the claim payment for business interruption coverage between the Insureds, which has left Plaintiff and the other insurers in the position of being unable to make a claim payment despite a willingness to do so.

19.     Accordingly, Plaintiff respectfully requests that this Honorable Court issue an order compelling arbitration of all disputes among the parties arising under the Policy, and that this Honorable Court grant such other relief as it deems just and proper. A proposed order is attached hereto as **Exhibit C.**

PD.27874340.1

Respectfully submitted,

By: */s/ Paige C. Jones*_____
      Paige Jones; TBN 24054609
      Mark Broom; TBN 24116133
      PHELPS DUNBAR LLP
      115 Grand Avenue, Ste. 222
      Southlake, Texas 76092
      Telephone: (817) 488-3134
      Telecopier: (817) 488-3214
      Email: jonesp@phelps.com

**ATTORNEYS FOR PLAINTIFF, ARGO (NO. 604) LIMITED**

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing was electronically filed with the Clerk of the United States District Court for the Southern District of Texas pursuant to its electronic case filing system (ECF). The ECF sent a "Notice of Electronic Filing" to the attorneys of record who have consented to accepting service via this method.

*/s/ Paige C. Jones*_____
Paige C. Jones

# <u>EXHIBIT A</u>

## Policy

## DECLARATION CERTIFICATE

### Memorandum of Commercial Property Insurance

| | |
|---|---|
| **Effective Dates:** | **11/1/2016  to  11/1/2017** |
| **Named Insured:** | **Rockport Associates I, LLC**<br>**Rockport Coastal Care Center** |
| **Policy #:** | **B1263EW0004816** |
| **Insurance Company:** | **Underwriters at Lloyds Insurance Company** |
| **Property Location:** | **1004 Young Street**<br>**Rockport, TX 78382** |
| **Additional Named Insured(s):** | **Per Insured, Location & Lender Endorsement** |
| **Mortgagee(s) & Loss Payee(s):** | **Bank Leumi USA**<br>**One North Lasalle St, Suite 200**<br>**Chicago, IL 60602** |
| **Forms and Endorsements:** | **Per Attachments** |

**Deductibles (Per Location, Per Occurrence):**

| | |
|---|---|
| **Direct Physical Damage:**<br>**Excludes Wind/Flood/Earthquake** | **$10,000** |

**Insurable Values:**

| | |
|---|---|
| **Building Limit:** | **$1,500,000** |
| **Rents Limit:** | **$  900,000** |
| **Contents:** | **$  250,000** |

**Cancellation: The insurer(s) may cancel this policy by mailing thirty (30) days written notice, except (10) days written notice for non-payment.**



# Insurer Authorized Document of Insurance (Lloyds & Companies)

**This Insurance** is effected with certain Underwriters at Lloyd's, London (not incorporated) and certain Companies. In this document these Underwriters and Companies will hereinafter be referred to as "the Insurers". The Insurers hereby agree in consideration of payment to them of the premium specified herein by or on behalf of the Insured, to insure against loss, including but not limited to associated expenses specified herein, if any, to the extent and in the manner provided in this Document of Insurance.

**The Security Details** contained in this document state which Insurers are party to this contract and defines their several (not joint) liability.

**It should be noted** that if the attached wordings and endorsements refer to 'the Assured' it is deemed to mean 'the Insured'. It is noted that if there are references in the attached wordings and endorsements to 'Underwriters' it is deemed to mean 'the Insurers'. It is further noted that if there are references to 'this policy' in the attached wordings and endorsements it is deemed to mean 'this Document of Insurance'.

**If any** terms, clauses or conditions are unclear you are advised to contact your broker immediately.

> Broker :
> Alesco Risk Management
> 67 Lombard Street
> London
> EC3V 9LJ
> United Kingdom.
>
> Property Division : +44(0) 207204 6000
> Claims Division : +44(0) 207204 6119

 ALESCO
1

# CONTRACT ENDORSEMENT

| | |
|---|---|
| **Unique Market Reference:** | B1263EW0004816 |
| **Endorsement Reference:** | 02 |
| **Insured:** | Property Risks Services Management |

## CONTRACT CHANGES

This Contract is amended as follows with effect from the 1st November 2016:

**SUPPLEMENTAL CLAUSES** unchanged other than:

U.S. Terrorism Risk Insurance Act Of 2002 As Amended New & Renewal Business Endorsement LMA5218 is deleted and replaced by U.S. Terrorism Risk Insurance Act Of 2002 As Amended Not Purchased Clause - LMA5219 ( as per attached)

All other terms and conditions remain unchanged

## AGREEMENT

**Settlement Due Date:** Not applicable

**London dated:** 31st October 2016

| GENERAL UNDERWRITERS AGREEMENT | | |
|---|---|---|
| Each Underwriters proportion is several not joint | | |
| **Slip Leader Only** | **Slip Leader and Agreement Parties** | **All Underwriters** |
| 3/11 | | |
| | | |

Note: Where more that one insurer participates in the contract, the contract terms may mean that it is not always necessary to obtain a record of agreement to the contract Endorsement from all of those insurers.

Alesco Risk Management Services
67 Lombard Street, London EC3V 9LJ
Authorised and Regulated by the Financial Conduct Authority Authorisation No. 312919



# CONTRACT ENDORSEMENT

## U.S. TERRORISM RISK INSURANCE ACT OF 2002 AS AMENDED
## NOT PURCHASED CLAUSE

*This Clause is issued in accordance with the terms and conditions of the "U.S. Terrorism Risk Insurance Act of 2002" as amended as summarized in the disclosure notice.*

It is hereby noted that the Underwriters have made available coverage for "insured losses" directly resulting from an "act of terrorism" as defined in the "U.S. Terrorism Risk Insurance Act of 2002", as amended ("TRIA") and the Insured has declined or not confirmed to purchase this coverage.

This Insurance therefore affords no coverage for losses directly resulting from any "act of terrorism" as defined in TRIA except to the extent, if any, otherwise provided by this policy.

All other terms, conditions, insured coverage and exclusions of this Insurance including applicable limits and deductibles remain unchanged and apply in full force and effect to the coverage provided by this Insurance.

LMA5219

Alesco Risk Management Services
67 Lombard Street, London EC3V 9LJ
Authorised and Regulated by the Financial Conduct Authority Authorisation No. 312919

h22043



1

# CONTRACT ENDORSEMENT

| | |
|---|---|
| **Unique Market Reference:** | B1263EW0004816 |
| **Endorsement Reference:** | 01 |
| **Insured:** | Property Risks Services Management |

## CONTRACT CHANGES

It is hereby noted and agreed with effect from the 1st November 2016 the attached **Tier 1 Counties** are added hereon.

It is further noted and agreed the following definition is added:

Named Windstorm shall mean a storm that has been declared by the National  Weather Service to be a Hurricane, Typhoon, Tropical Cyclone, Tropical  Storm, or Tropical Depression and where a name (and not only a number) has been applied by the National Hurricane Centre.

All other terms and conditions remain unchanged

## AGREEMENT

**Settlement Due Date:**  Not applicable

**London dated:**  31st October 2016

| GENERAL UNDERWRITERS AGREEMENT | | |
|---|---|---|
| Each Underwriters proportion is several not joint | | |
| **Slip Leader Only** | **Slip Leader and Agreement Parties** | **All Underwriters** |
| | | |
| | | |

Note: Where more that one insurer participates in the contract, the contract terms may mean that it is not always necessary to obtain a record of agreement to the contract Endorsement from all of those insurers.

Alesco Risk Management Services
67 Lombard Street, London EC3V 9LJ
Authorised and Regulated by the Financial Conduct Authority Authorisation No. 312919



# CONTRACT ENDORSEMENT

**Tier 1 Counties**

| State | State Code | County |
|---|---|---|
| Alabama | AL | Baldwin County |
| Alabama | AL | Mobile County |
| Connecticut | CT | Middlesex County |
| Connecticut | CT | New Haven County |
| Connecticut | CT | New London County |
| Delaware | DE | Kent County |
| Delaware | DE | New Castle County |
| Delaware | DE | Sussex County |
| Florida | FL | **Entire State** |
| Georgia | GA | Bryan County |
| Georgia | GA | Camden County |
| Georgia | GA | Chatham County |
| Georgia | GA | Glynn County |
| Georgia | GA | Liberty County |
| Georgia | GA | Mcintosh County |
| Hawaii | HI | **Entire State** |
| Louisiana | LA | Assumption Parish |
| Louisiana | LA | Cameron Parish |
| Louisiana | LA | Iberia Parish |
| Louisiana | LA | Jefferson Parish |
| Louisiana | LA | Lafourche Parish |
| Louisiana | LA | Orleans Parish |
| Louisiana | LA | Plaquemines Parish |
| Louisiana | LA | St. Bernard Parish |
| Louisiana | LA | St. Charles Parish |
| Louisiana | LA | St. John The Baptist Parish |
| Louisiana | LA | St. Mary Parish |
| Louisiana | LA | Terrebonne Parish |
| Louisiana | LA | Vermilion Parish |
| Maine | ME | Cumberland County |
| Maine | ME | Hancock County |
| Maine | ME | Knox County |
| Maine | ME | Lincoln County |
| Maine | ME | Sagadahoc County |
| Maine | ME | Waldo County |
| Maine | ME | Washington County |
| Maine | ME | York County |
| Maryland | MD | Anne Arundel County |
| Maryland | MD | Baltimore City |
| Maryland | MD | Baltimore County |

Alesco Risk Management Services
67 Lombard Street, London EC3V 9LJ
Authorised and Regulated by the Financial Conduct Authority Authorisation No. 312919

h22030



# CONTRACT ENDORSEMENT

| | | |
|---|---|---|
| Maryland | MD | Calvert County |
| Maryland | MD | Cecil County |
| Maryland | MD | Charles County |
| Maryland | MD | Dorchester County |
| Maryland | MD | Harford County |
| Maryland | MD | Kent County |
| Maryland | MD | Queen Anne's County |
| Maryland | MD | Somerset County |
| Maryland | MD | St. Mary's County |
| Maryland | MD | Talbot County |
| Maryland | MD | Wicomico County |
| Maryland | MD | Worcester County |
| Massachusetts | MA | Barnstable County |
| Massachusetts | MA | Bristol County |
| Massachusetts | MA | Dukes County |
| Massachusetts | MA | Essex County |
| Massachusetts | MA | Nantucket County |
| Massachusetts | MA | Norfolk County |
| Massachusetts | MA | Plymouth County |
| Massachusetts | MA | Suffolk County |
| Mississippi | MS | Hancock County |
| Mississippi | MS | Harrison County |
| Mississippi | MS | Jackson County |
| New Hampshire | NH | Rockingham County |
| New Jersey | NJ | Atlantic County |
| New Jersey | NJ | Burlington County |
| New Jersey | NJ | Cape May County |
| New Jersey | NJ | Cumberland County |
| New Jersey | NJ | Hudson County |
| New Jersey | NJ | Middlesex County |
| New Jersey | NJ | Monmouth County |
| New Jersey | NJ | Ocean County |
| New Jersey | NJ | Salem County |
| New York | NY | Bronx County |
| New York | NY | Kings County |
| New York | NY | Nassau County |
| New York | NY | New York County |
| New York | NY | Queens County |
| New York | NY | Richmond County |
| New York | NY | Suffolk County |
| New York | NY | Westchester County |
| North Carolina | NC | Beaufort County |
| North Carolina | NC | Bertie County |
| North Carolina | NC | Brunswick County |

Alesco Risk Management Services
67 Lombard Street, London EC3V 9LJ
Authorised and Regulated by the Financial Conduct Authority Authorisation No. 312919

h22030



4

# CONTRACT ENDORSEMENT

| | | |
|---|---|---|
| North Carolina | NC | Camden County |
| North Carolina | NC | Carteret County |
| North Carolina | NC | Chowan County |
| North Carolina | NC | Craven County |
| North Carolina | NC | Currituck County |
| North Carolina | NC | Dare County |
| North Carolina | NC | Hyde County |
| North Carolina | NC | Jones County |
| North Carolina | NC | New Hanover County |
| North Carolina | NC | Onslow County |
| North Carolina | NC | Pamlico County |
| North Carolina | NC | Pasquotank County |
| North Carolina | NC | Pender County |
| North Carolina | NC | Perquimans County |
| North Carolina | NC | Tyrrell County |
| North Carolina | NC | Washington County |
| Puerto Rico | | **Entire Island** |
| Rhode Island | RI | Bristol County |
| Rhode Island | RI | Kent County |
| Rhode Island | RI | Newport County |
| Rhode Island | RI | Washington County |
| South Carolina | SC | Beaufort County |
| South Carolina | SC | Charleston County |
| South Carolina | SC | Colleton County |
| South Carolina | SC | Georgetown County |
| South Carolina | SC | Horry County |
| South Carolina | SC | Jasper County |
| Texas | TX | Aransas County |
| Texas | TX | Brazoria County |
| Texas | TX | Calhoun County |
| Texas | TX | Cameron County |
| Texas | TX | Chambers County |
| Texas | TX | Galveston County |
| Texas | TX | Harris County |
| Texas | TX | Jefferson County |
| Texas | TX | Kenedy County |
| Texas | TX | Kleberg County |
| Texas | TX | Matagorda County |
| Texas | TX | Nueces County |
| Texas | TX | Refugio County |
| Texas | TX | San Patricio County |
| Texas | TX | Willacy County |
| Virginia | VA | Accomack County |
| Virginia | VA | Alexandria City |

Alesco Risk Management Services
67 Lombard Street, London EC3V 9LJ
Authorised and Regulated by the Financial Conduct Authority Authorisation No. 312919

h22030



## CONTRACT ENDORSEMENT

| Virginia | VA | Arlington County |
|----------|-----|------------------|
| Virginia | VA | Chesapeake City |
| Virginia | VA | Essex County |
| Virginia | VA | Fairfax County |
| Virginia | VA | Fredericksburg City |
| Virginia | VA | Gloucester County |
| Virginia | VA | Hampton City |
| Virginia | VA | James City County |
| Virginia | VA | King George County |
| Virginia | VA | Lancaster County |
| Virginia | VA | Manassas City |
| Virginia | VA | Mathews County |
| Virginia | VA | Middlesex County |
| Virginia | VA | Newport News City |
| Virginia | VA | Norfolk City |
| Virginia | VA | Northampton County |
| Virginia | VA | Northumberland County |
| Virginia | VA | Poquoson City |
| Virginia | VA | Portsmouth City |
| Virginia | VA | Prince William County |
| Virginia | VA | Richmond County |
| Virginia | VA | Stafford County |
| Virginia | VA | Virginia Beach City |
| Virginia | VA | Westmoreland County |
| Virginia | VA | Williamsburg City |
| Virginia | VA | York County |

Alesco Risk Management Services
67 Lombard Street, London EC3V 9LJ
Authorised and Regulated by the Financial Conduct Authority Authorisation No. 312919

h22030

INSURER AUTHORIZED DOCUMENT OF INSURANCE

## CONTENTS PAGE

SECTION I -RISK DETAILS       2

SECTION II - INFORMATION       7

SECTION III - SECURITY DETAILS       8

SECTION IV - CONTRACT ADMINISTRATION AND ADVISORY SECTIONS       13

SECTION V - FISCAL AND REGULATORY SECTION       16

SECTION VI - BROKER REMUNERATION AND DEDUCTIONS SECTION       17

SECTION VII – THE WORDING       18

SECTION VIII – SUPPLEMENTAL CLAUSES       58





**1263**
**ARM**

### MARKET REFORM CONTRACT

UMR: B1263EW0004816

___

#### SECTION I -RISK DETAILS

**UNIQUE MARKET
REFERENCE:**   B1263EW0004816

**TYPE:**   **RISKS OF DIRECT PHYSICAL LOSS OR DAMAGE INCLUDING EARTH
MOVEMENT, FLOOD, BOILER AND MACHINERY / EQUIPMENT
BREAKDOWN AND CONSEQUENTIAL LOSS RESULTING THEREFROM.**

**INSURED:**   **Property Risk Services Management, Inc** and its affiliated, subsidiary, and
associated companies and/or corporations and the Insured's interest in
partnerships and joint ventures as now exist or may hereafter be constituted
or acquired and any party in interest which the Insured is legally liable to
insure.

**ADDRESS:**   4686 McDermott Road, Suite 201, Plano, TX 75024

**PERIOD:**   From:   1st November 2016
To:   1st November 2017
Both dates at 12.01 Local Standard Time at the Address of the Insured.

**INTEREST:**   Real and Personal Property as described in the Policy Wording and as
declared to the Underwriters.

TIME ELEMENT: Business Interruption as described in the Policy Wording
and as declared to the Underwriters.

**SUM INSURED:**   USD 5,000,000   each Loss Occurrence including

USD 2,500,000   each Loss Occurrence in the annual aggregate in
respect of the peril of Flood and
USD 2,500,000   each Loss Occurrence in the annual aggregate in
respect of the peril of Earth Movement.

Subject to the 'Order Hereon' stated in SECTION III - SECURITY DETAILS

**DEDUCTIBLES:**   All Other Perils:
USD 10,000 per occurrence

Flood:
USD 50,000 per occurrence

Earth Movement:
USD 50,000 per occurrence

Tier I Named Windstorm
2% per unit of insurance, minimum USD 50,000 per occurrence

AMA
1200



**1263
ARM**

## MARKET REFORM CONTRACT

### UMR: B1263EW0004816

Wind and Hail

| | |
|---|---|
| Location Value:<br>Up to USD 4,000,000: | Deductible:<br>USD 10,000 per occurrence, per<br>location' as listed on the schedule of<br>values on file with Underwriters. |
| USD 4,000,000.01 - USD 10,000,000: | USD 25,000 per occurrence, per<br>location' as listed on the schedule of<br>values on file with Underwriters. |
| USD 10,000,000.01 - USD 15,000,000: | USD 50,000 per occurrence, per<br>location' as listed on the schedule of<br>values on file with Underwriters. |
| USD 15,000,000.01 and above | USD 100,000 per occurrence, per<br>location' as listed on the schedule of<br>values on file with Underwriters. |

For the purposes of these deductibles, the following shall be considered a
separate Unit of Insurance:

- each separate building or structure;
- the contents of each separate building or structure;
- property in each yard;
- business interruption and rental value for the twelve month period immediately following the loss.

The applicable per unit of insurance deductible shall apply only to the unit of
insurance which results in a claim payment under this policy.

**SUBLIMITS:**

| | |
|---|---|
| MISCELLANEOUS UNNAMED LOCATIONS | USD 1,000,000 |
| NEW BUILDINGS AND ADDITIONS UNDER<br>CONSTRUCTION | USD 1,000,000 |
| ACCOUNTS RECEIVABLE | USD 500,000 |
| AUTOMATIC COVERAGE | USD 5,000,000 |
| DEBRIS REMOVAL | USD 1,000,000 |
| DECONTAMINATION COSTS | USD 500,000 |
| DEFERRED PAYMENTS | USD 500,000 |
| DEMOLITION AND INCREASED COST OF<br>CONSTRUCTION | USD 5,000,000 |
| ERRORS AND OMISSIONS | USD 100,000 |
| EXPEDITING COSTS and EXTRA EXPENSE combined | USD 500,000 |
| LAND AND WATER CONTAMINANT OR POLLUTANT<br>CLEANUP, REMOVAL AND DISPOSAL in the aggregate<br>during the Period of Insurance | USD 100,000 |
| PROFESSIONAL FEES | USD 100,000 |
| SERVICE INTERRUPTION PROPERTY DAMAGE and<br>SERVICE INTERRUPTION TIME ELEMENT combined | USD 500,000 |
| TRANSPORTATION | USD 100,000 |



 ALESCO

**1263
ARM**

## MARKET REFORM CONTRACT

### UMR: B1263EW0004816

| | |
|---|---|
| RADIOACTIVE CONTAMINATION (SUDDEN & ACCIDENTAL) | USD 100,000 |
| DATA REPRODUCTION COST | USD 100,000 |
| LEASEHOLD INTEREST | USD 1,000,000 |
| RENTAL INSURANCE | USD 5,000,000 |
| COMMISSIONS, PROFITS AND ROYALTIES | USD 100,000 |
| CONTINGENT TIME ELEMENT | USD 100,000 |

In addition to the time limits shown in the Policy, the following apply:
90 day period AUTOMATIC COVERAGE
30 day period INGRESS/EGRESS
30 day period CIVIL OR MILITARY AUTHORITY
30 day period EXTENDED PERIOD OF LIABILITY

**NOTICES:**    TEXAS SURPLUS LINES NOTICE LMA9079
As attached in SECTION VIII – SUPPLEMENTAL CLAUSES

**TERRITORY:**    United States of America, its territories, possessions and Canada.

**CONDITIONS:**    LMA3033 Wording as attached SECTION VII.

Loss swing:

- Losses for 2015-2016 period settle between **$4,600,000** and **$4,800,000** = nil Additional Premium (based on 2016/17 renewal premium)
- Losses for 2015-2016 period settle between **$4,800,000** and **$5,100,000** = **2.5% Additional Premium** (based on 2016/17 renewal premium)
- Losses for 2015-2016 period settle between **$5,100,000** and **$5,500,000** = **5% Additional Premium** (based on 2016/17 renewal premium)
- Losses for 2015-2016 period settle in excess of **$5,500,000** = To be agreed by underwriters, **but not to exceed 10% Additional Premium**

**SUPPLEMENTAL
CLAUSES:**    as attached SECTION VIII including:-

- NMA2340 Seepage And/or Pollution And/or Contamination Exclusion
- NMA1191 Nuclear Radioactive Contamination Exclusion Clause.
- NMA2918 War and Terrorism Exclusion Endorsement.
- U.S. Terrorism Risk Insurance Act Of 2002 As Amended New & Renewal Business Endorsement LMA5218
- LSW 1022A Texas Complaint Notice
- LMA5120 Fraudulent Claims Clause
- LMA5130 Application of Sublimits Endorsement
- LMA3100 Sanction Limitation and Exclusion Clause
- Surplus Lines Notice

**CHOICE OF LAW
& JURISDICTION:**    Law:    State of Texas, United States of America.
Jurisdiction:    United States of America .

Service of Suit Clause as per form naming Mendes and Mount, 750 Seventh Avenue, New York, NY 10019-6829, USA





**1263
ARM**

## MARKET REFORM CONTRACT

### UMR: B1263EW0004816

| | |
|---|---|
| **PREMIUM:** | <u>Material Damage / Time Element</u> |
| | ░░░░░░░░░░ (100%) Annual. |
| | <u>TRIA</u> |
| | USD (100%) Annual. |
| **PREMIUM PAYMENT TERMS:** | <u>Premium Payment Condition (Time On Risk) 4/86</u> |
| | It is a condition of this contract of Insurance that the premium due at inception must be paid to and received by Insurers on or before midnight on 15Th January 2017 |
| | If this condition is not complied with, then this contract of Insurance shall terminate on the above date with the Insured hereby agreeing to pay premium calculated at not less than pro rata temporis. |
| **TAXES PAYABLE BY INSURED AND ADMINISTERED BY INSURER(S):** | Nil |





**1263**
**ARM**

## MARKET REFORM CONTRACT

UMR: B1263EW0004816

**INSURER CONTRACT DOCUMENTATION:**

This document details the contract terms entered into by the Insurer(s), and constitutes the contract document.

This Contract is subject to U.S. State Surplus Lines requirements. It is the responsibility of the surplus lines broker to affix a surplus lines notice to the contract document before it is provided to the Insured. In the event that the surplus lines notice is not affixed the contract document the Insured should contact the surplus lines broker.





**1263
ARM**

**MARKET REFORM CONTRACT**

UMR: B1263EW0004816

## SECTION II - INFORMATION

The following Information was provided to Insurer(s) to support the assessment of the risk at the time of underwriting:

Information per Presentation which held on Alesco Risk Management file and available on request, and which noted and agreed by Insurer(s).

Total Declared Values: USD 488,632,973

Approximate breakdown of values as per Schedule contained within Submission which noted and agreed by Insurer(s).

Loss record (as advised to Alesco Risk Management contained within Submission which noted and agreed by Insurer(s).



 ALESCO

**1263**
**ARM**

### MARKET REFORM CONTRACT

UMR: B1263EW0004816

### SECTION III - SECURITY DETAILS

**INSURER'S**
**LIABILITY**

#### (RE)INSURERS LIABILITY CLAUSE

**(Re)insurer's liability several not joint**
The liability of a (re)insurer under this contract is several and not joint with
other (re)insurers party to this contract. A (re)insurer is liable only for the
proportion of liability it has underwritten. A (re)insurer is not jointly liable for the
proportion of liability underwritten by any other (re)insurer. Nor is a (re)insurer
otherwise responsible for any liability of any other (re)insurer that may
underwrite this contract.

The proportion of liability under this contract underwritten by a (re)insurer (or,
in the case of a Lloyd's syndicate, the total of the proportions underwritten by
all the members of the syndicate taken together) is shown next to its stamp.
This is subject always to the provision concerning "signing" below.

In the case of a Lloyd's syndicate, each member of the syndicate (rather than
the syndicate itself) is a (re)insurer. Each member has underwritten a
proportion of the total shown for the syndicate (that total itself being the total of
the proportions underwritten by all the members of the syndicate taken
together). The liability of each member of the syndicate is several and not joint
with other members. A member is liable only for that member's proportion. A
member is not jointly liable for any other member's proportion. Nor is any
member otherwise responsible for any liability of any other (re)insurer that
may underwrite this contract. The business address of each member is
Lloyd's, One Lime Street, London EC3M 7HA. The identity of each member of
a Lloyd's syndicate and their respective proportion may be obtained by writing
to Market Services, Lloyd's, at the above address.

**Proportion of liability**
Unless there is "signing" (see below), the proportion of liability under this
contract underwritten by each (re)insurer (or, in the case of a Lloyd's
syndicate, the total of the proportions underwritten by all the members of the
syndicate taken together) is shown next to its stamp and is referred to as its
"written line".

Where this contract permits, written lines, or certain written lines, may be
adjusted ("signed"). In that case a schedule is to be appended to this contract
to show the definitive proportion of liability under this contract underwritten by
each (re)insurer (or, in the case of a Lloyd's syndicate, the total of the
proportions underwritten by all the members of the syndicate taken together).



 ALESCO

**1263
ARM**

### MARKET REFORM CONTRACT

UMR: B1263EW0004816

A definitive proportion (or, in the case of a Lloyd's syndicate, the total of the proportions underwritten by all the members of a Lloyd's syndicate taken together) is referred to as a "signed line". The signed lines shown in the schedule will prevail over the written lines unless a proven error in calculation has occurred.

Although reference is made at various points in this clause to "this contract" in the singular, where the circumstances so require this should be read as a reference to contracts in the plural.

LMA3333
21 June 2007

**ORDER HEREON:**              100% of 100%

**BASIS OF WRITTEN
LINES:**                           Percentage of Whole

**SIGNING
PROVISIONS:**              In the event that the written lines hereon exceed 100% of the order, any lines written "to stand" will be allocated in full and all other lines will be signed down in equal proportions so that the aggregate signed lines are equal to 100% of the order without further agreement of any of the
(re)insurers.
However:
a) in the event that the placement of the order is not completed by the commencement date of the period of insurance then all lines written by that date will be signed in full;
b) the signed lines resulting from the application of the above provisions can be varied, before or after the commencement date of the period of insurance, by the documented agreement of the
(re)insured and all (re)insurers whose lines are to be varied. The variation to the contracts will take effect only when all such (re)insurers have agreed, with the resulting variation in signed lines commencing from the date set out in that agreement.



 ALESCO

**1263**
**ARM**

### MARKET REFORM CONTRACT

UMR: B1263EW0004816

---

In a co-insurance placement, following (re)insurers may, but are not obliged to , follow the premium charged by the lead (re) insurer.

(Re) insurers may not seek to guarantee for themselves terms as favourable as those which others subsequently achieve during the placement.

**WRITTEN**
**LINES %**



AMA 1200

15%

| 3 | 3 | 7 | 5 | 3 | 1 | 6 | A | C | O | O | O |
|---|---|---|---|---|---|---|---|---|---|---|---|
| N | N | N | N | N | N | N | A | A | N | N | N |

7½% *amlin* AML 2001

| N | 8 | C | 7 | 0 | 2 | 0 | 5 | / | 6 | 4 | 8 |
|---|---|---|---|---|---|---|---|---|---|---|---|
| A | A | A | N | N | N | N | N | N | N | A | A |

PROPERTY & CASUALTY
CommercialProperty@amlin.co.uk
(S/80%)

APOLLO                    APL 1969

20%

| 1 | 6 | P | H | 5 | 3 | 1 | 2 | 5 | 3 | 0 | 1 |
|---|---|---|---|---|---|---|---|---|---|---|---|

LSU

SCHEDULES@APOLLOUNDERWRITING.COM

NAV 1221

15/

| P | L | C | O | 1 | 5 | R | A | 9 | 2 | 2 | 9 |
|---|---|---|---|---|---|---|---|---|---|---|---|

S:100%



AMA 1200   10



**1263**
**ARM**

### MARKET REFORM CONTRACT

UMR: B1263EW0004816

**WRITTEN
LINES %**



10%

15%

7½%

5%





11



**1263
ARM**

## MARKET REFORM CONTRACT

UMR: B1263EW0004816

**WRITTEN
LINES %**



5 %

| I | D | P | R | 2 | 0 | 2 | 7 | 3 | 6 | |
| C2219 | | | | XIS | | | | | | |

EXCLUDING LETTERS OF CREDIT AND
OUTSTANDING CLAIMS ADVANCES AND/OR
INCURRED BUT NOT REPORTED LOSSES

31/10/16

AMA
1200

12



**1263**
**ARM**

## MARKET REFORM CONTRACT

### UMR: B1263EW0004816

### SECTION IV - CONTRACT ADMINISTRATION AND ADVISORY SECTIONS

#### SUBSCRIPTION AGREEMENT SECTION

**SLIP LEADER:**  AMA1200

**BASIS OF AGREEMENT TO CONTRACT CHANGES:**

GUA (October 2001) with Non-Marine Schedule (October 2001)

Final premium/ going in values to be agreed Leading Underwriter only.

Insurer(s) hereon agree to contribute to survey and valuation fees, as incurred.

Agreement to net equivalent downwards (if required) is to be agreed by Slip Leader only.

Extensions to Premium Payment Condition date to be agreed by Slip Leader only.

Endorsements will be advised to the following market when necessary under the terms of this agreement Alesco Risk Management using Fax or email.

**OTHER AGREEMENT PARTIES FOR CONTRACT CHANGES, FOR PART 2 GUA CHANGES ONLY:**

Slip leader only to agree part two changes.

**AGREEMENT PARTIES FOR CONTRACT CHANGES, FOR THEIR PROPORTION ONLY, IF ANY:**

None

**BASIS OF CLAIMS AGREEMENT:**

Claims to be managed in accordance with:

i) The Lloyd's Claims Scheme (Combined), or as amended or any successor thereto.

*(N.B. The applicable Scheme/part will be determined by the rules and scope of the Scheme(s)).*

ii) IUA claims agreement practices.

iii) The practices of any company(ies) electing to agree claims in respect of their own participation.



**1263
ARM**



## MARKET REFORM CONTRACT

UMR: B1263EW0004816

| | |
|---|---|
| **CLAIMS AGREEMENT PARTIES:** | i) For Lloyd's syndicates |
| | The leading Lloyd's syndicate and, where required by the applicable Lloyd's Claims Scheme, the second Lloyd's syndicate and/or the Scheme Service Provider. |
| **CLAIMS AGREEMENT PARTIES: (continued)** | The second Lloyd's Syndicate is |
| | ii) Those companies acting in accordance with the IUA claims agreement practices, excepting those that may have opted out via iii below. |
| | iii) Those companies that have specifically elected to agree claims in respect of their own participation. |
| | iv) All other subscribing insurers that are not party to the Lloyd's/IUA claims agreement practices, each in respect of their own participation. |
| **CLAIMS ADMINISTRATION:** | Broker to enter claims advices into the relevant market CLASS system.  All Insurer(s) to use their respective market CLASS systems for claims agreements where available. E-mail to be used by Broker to Insurer(s) for distribution of claim file information in support of CLASS entry. |
| | Insurer(s) to respond to claims matters via CLASS if possible. |
| **RULES AND EXTENT OF ANY OTHER DELEGATED CLAIMS AUTHORITY:** | None |
| **EXPERT(S) FEES COLLECTION:** | Broker to collect Fees |
| **SETTLEMENT DUE DATE:** | 15th January 2017 |
| **BUREAUX ARRANGEMENTS:** | Insurer(s) authorise Xchanging Ins-sure Services Limited and/or Xchanging Claims Services Limited to take down additional premiums, return premium, non-premium endorsements and claims on photo-copies of Market Reform Contract, signing slip or full policy as applicable. |
| | LPSO/LPC/XIS are fully authorised to accept premium as advised by client, and processed by Alesco Risk Management. including final stock/loss of profits, or other adjustments as applicable without prior agreement. |
| | Underwriters hereon agree accept premium and settle claims in US Dollars / Euro / Sterling as required, at rate of exchange at time of settlement from the client / cedant / reinsured. |
| | Underwriters agree that the broker may release de-linked premium for this contract into settlement at different times. |



**1263
ARM**

### MARKET REFORM CONTRACT

UMR: B1263EW0004816

Agreed that if Premium Payment Condition is extended Terms of trade date automatically extended to conform.

Whenever a Premium Payment Condition due date falls on a weekend or public holiday it is agreed that the date is automatically carried forward to the first normal weekday thereafter.





**1263**
**ARM**

### MARKET REFORM CONTRACT

UMR: B1263EW0004816

### SECTION V - FISCAL AND REGULATORY SECTION

**TAX PAYABLE BY INSURER(S):** None

**COUNTRY OF ORIGIN:** United States of America

**OVERSEAS BROKER:** Risk Placement Services, Inc
5001 Spring Valley Road Suite 255W Dallas
TX 75244

**SURPLUS LINES BROKER:** Risk Placement Services, Inc
5001 Spring Valley Road Suite 255W Dallas
TX 75244
License Number: 16158

**STATE OF FILING:** Texas

**US CLASSIFICATION:** Surplus Lines

**ALLOCATION OF PREMIUM TO CODING:** 100%     P2
~~100%     GT~~

**REGULATORY CLIENT CLASSIFICATION:** Large Risk





**1263
ARM**

### MARKET REFORM CONTRACT

UMR: B1263EW0004816

### SECTION VI - BROKER REMUNERATION AND DEDUCTIONS SECTION

**FEE PAYABLE
BY CLIENT?:**          NO

**TOTAL BROKERAGE:**   ███████████████████████████████

**OTHER DEDUCTIONS
FROM PREMIUM:**        NIL



**1263**
**ARM**



### MARKET REFORM CONTRACT

UMR: B1263EW0004816

### SECTION VII – THE WORDING



Attached to and forming part of MRC B1263EW0004816.

**1263
ARM**



**MARKET REFORM CONTRACT**

UMR: B1263EW0004816

**SECTION VII – THE WORDING**

Attached to and forming part of MRC B1263EW0004816.   31/0.16



**1263**
**ARM**

### MARKET REFORM CONTRACT

UMR: B1263EW0004816

UNITED STATES OF AMERICA
NON-MARINE PROPERTY
PHYSICAL LOSS OR DAMAGE
WORDING

### TABLE OF CONTENTS

| Title | Section |
|---|---|
| SCHEDULE | A |
| INSURING AGREEMENT | B |
| PROPERTY DAMAGE | C |
| TIME ELEMENT | D |
| LOSS ADJUSTMENT AND SETTLEMENT | E |
| GENERAL PROVISIONS | F |





**1263**
**ARM**

**MARKET REFORM CONTRACT**

UMR: B1263EW0004816

**SECTION A**

**SCHEDULE**

**Policy Number:** AS STATED IN SECTION 1 – RISK DETAILS

**Unique Market Reference Number:** AS STATED IN SECTION 1 – RISK DETAILS

**Name of Insured:** AS STATED IN SECTION 1 – RISK DETAILS

**Address of Insured:** AS STATED IN SECTION 1 – RISK DETAILS

**Period of Insurance:** AS STATED IN SECTION 1 – RISK DETAILS

**Territory:** AS STATED IN SECTION 1 – RISK DETAILS.

**Policy Limit of Liability:** AS STATED IN SECTION 1 – RISK DETAILS

Subject, however, to sub-limits of liability as follows:

**AS STATED IN SECTION 1 – RISK DETAILS**

**Deductible(s):** AS STATED IN SECTION 1 – RISK DETAILS

**Time Limits:**
In addition to the time limits shown in the Policy, the following apply:

90 day period AUTOMATIC COVERAGE
30 day period INGRESS/EGRESS
30 day period CIVIL OR MILITARY AUTHORITY
30 day period EXTENDED PERIOD OF LIABILITY

**Service of Suit Nominee:**
Mendes and Mount, 750 Seventh Avenue, New York, NY 10019-6829

**Supplemental Clauses:** See Section VIII

**Premium:** AS STATED IN SECTION 1 – RISK DETAILS

**Dated in London:** October 2016

21.10.16



**1263
ARM**

### MARKET REFORM CONTRACT

UMR: B1263EW0004816

#### INSURING AGREEMENT - SECTION B

#### INSURING CLAUSE

In consideration of the payment of premium as specified in the Schedule, and subject to the terms, conditions and exclusions of this Policy, the Underwriters agree to cover the Property Insured against risks of direct physical loss or physical damage occurring during the Period of Insurance.

#### TERRITORY

This Policy covers Insured Locations situated within the Territory specified in the Schedule.

#### INSURED LOCATION

A.   The coverages under this Policy apply to an Insured Location unless otherwise provided.

Insured Location is a location:

1.   listed on a schedule on file with the Underwriters.

2.   covered as a Miscellaneous Unnamed Location.

3.   covered under the terms and conditions of the Automatic Coverage or Errors and Omissions provisions.

B.   The term Location wherever used in this Policy means:

1.   as specified in the schedule of locations, except for Miscellaneous Unnamed Locations;

or

2.   if not so specified or if a Miscellaneous Unnamed Location, a building, yard, dock, wharf, pier or bulkhead (or any group of the foregoing) bounded on all sides by public streets, clear land space or open waterways, each not less than fifty feet wide.  For the purpose of this provision any bridge or tunnel crossing such street, space or waterway will render such separation inoperative.

#### LIMIT OF LIABILITY

The Underwriters' maximum liability in a single Occurrence regardless of the number of Locations or coverages involved will not exceed the Policy limit of liability as specified in the Schedule. However, when a sub-limit of liability for a Location or other specified property or coverage is shown, such sub-limit will be the maximum amount payable for any loss or damage arising from physical loss or damage at such Location or involving such other specified property or such coverage.

The sub-limits of liability specified in the Schedule and as may be specified elsewhere in this Policy are program sub-limits of liability and are part of and not in addition to the program limit of liability over this Policy and all other program policies combined.

The sub-limits of liability specified in the Schedule apply in the aggregate on a per Occurrence basis, unless otherwise specified, for all Locations and coverages combined.



31.10.16



**1263**
**ARM**

### MARKET REFORM CONTRACT

UMR: B1263EW0004816

The Underwriters' maximum liability (or sub-limit of liability) in a single Occurrence regardless of the number of Locations or coverages involved will not exceed the Policy limit of liability as specified in the Schedule. When a limit of liability for a Location or other specified property or coverage is shown, such limit will be the maximum amount payable for any loss or damage arising from physical loss or damage at such Location or involving such other specified property or coverage.

### DEDUCTIBLES

In each case of loss covered by this Policy, the Underwriters will be liable only if the Insured sustains a loss in a single Occurrence greater than the applicable deductible specified in the Schedule, and only for its share of that greater amount.

Unless otherwise stated below:

A.  When this Policy insures more than one location, the deductible will apply against the total loss covered by this Policy in any one Occurrence.

B.  If two or more deductibles provided in this Policy apply to a single Occurrence, the total to be deducted will not exceed the largest deductible applicable, unless otherwise provided.

However, any deductibles applicable to Time Element coverages shall apply in addition to the applicable property damage deductible.

### OCCURRENCE DEFINITION

The term Occurrence wherever used in this Policy means the sum of all individual losses or series of individual losses resulting from or arising out of and directly occasioned by any one insured event regardless of the number of Insured Locations affected. Occurrence so defined shall be limited to:

A.  72 consecutive hours as regards a hurricane, a typhoon, windstorm, rainstorm, hailstorm and/or tornado;

B.  72 consecutive hours as regards Earth Movement;

C.  72 consecutive hours and within the limits of one city, town or village as regards riots, civil commotions and malicious damage;

D.  72 consecutive hours as regards any Occurrence which includes individual loss or losses from any of the causes mentioned in A, B and C above;

and no individual loss from whatever insured cause, which occurs outside these periods or areas, shall be included in that Occurrence.

The Insured may choose the date and time when any such period of consecutive hours commences and if any event is of greater duration than the above period, the Insured may divide that event into two or more Occurrences provided no two periods overlap and provided no period commences earlier than the date and time of the happening of the first recorded individual loss to the Insured in that event during the Period of Insurance.

### PROPERTY DAMAGE - SECTION C

### PROPERTY INSURED

This Policy insures the following property, unless otherwise excluded elsewhere in this Policy, located at an Insured Location or within 1,000 feet thereof, to the extent of the interest of the Insured in such property.





**1263
ARM**

### MARKET REFORM CONTRACT

UMR: B1263EW0004816

A.  Real Property, including new buildings and additions under construction at an Insured Location, in which the Insured has an insurable interest.

B.  Personal Property:

   1.  owned by the Insured, including the Insured's interest as a tenant in improvements and betterments. In the event of insured physical loss or damage, the Underwriters agree to accept and consider the Insured as sole and unconditional owner of improvements and betterments, notwithstanding any contract or lease to the contrary.

   2.  of officers and employees of the Insured.

   3.  of others in the Insured's custody to the extent the Insured is under obligation to keep insured for physical loss or damage insured by this Policy.

   4.  of others in the Insured's custody to the extent of the Insured's legal liability for insured physical loss or damage to Personal Property.  The Underwriters will defend that portion of any suit against the Insured that alleges such liability and seeks damages for such insured physical loss or damage.  The Underwriters may, without prejudice, investigate, negotiate and settle any claim or suit as the Underwriters deem expedient.

This Policy also insures the interest of contractors and subcontractors in insured property during construction at an Insured Location or within 1,000 feet thereof, to the extent of the Insured's legal liability for insured physical loss or damage to such property.  Such interest of contractors and subcontractors is limited to the property for which they have been hired to perform work and such interest will not extend to any Time Element coverage provided under this Policy.

### PROPERTY EXCLUDED

This Policy excludes:

A.  currency, money, precious metal in bullion form, notes, or securities.

B.  land, water or any other substance in or on land; except this exclusion does not apply to:

   1.  land improvements consisting of landscape gardening, roadways and pavements, but not including any fill or land beneath such property.

   2.  water that is contained within any enclosed tank, piping system or any other processing equipment.

C.  animals, standing timber, growing crops.

D.  watercraft, aircraft, spacecraft, and satellites.

E.  vehicles of officers and employees of the Insured or vehicles otherwise insured for physical loss or damage.

F.  underground mines or mine shafts or any property within such mine or shaft.

G.  dams, dikes and levees.

H.  property in transit, except as otherwise provided by this Policy.



 ALESCO

**1263**
**ARM**

### MARKET REFORM CONTRACT

UMR: B1263EW0004816

I.   property sold by the Insured under conditional sale, trust agreement, installment plan or other deferred payment plan after delivery to customers, except as provided by the Deferred Payments coverage of this Policy.

J.   transmission and distribution lines beyond 1,000 feet of the Insured Location.

### ADDITIONAL COVERAGES

This Policy includes the following Additional Coverages for physical loss or damage insured by this Policy.

These Additional Coverages:

1.   are subject to the applicable limit or sub-limit of liability;

2.   will not increase the Policy limit of liability; and

3.   are subject to the Policy provisions, including applicable exclusions and deductibles,

all as shown in this section and elsewhere in this Policy.

### ACCOUNTS RECEIVABLE

This Policy covers any shortage in the collection of accounts receivable, resulting from insured physical loss or damage to accounts receivable records while anywhere within the Territory stated in the Schedule, including while in transit in such territory. The Underwriters will be liable for the interest charges on any loan to offset impaired collections pending repayment of such sum uncollectible as the result of such loss or damage.  Unearned interest and service charges on deferred payment accounts and normal credit losses on bad debts will be deducted in determining the recovery.

1.   In the event of loss to accounts receivable records, the Insured will use all reasonable efforts, including legal action, if necessary, to effect collection of outstanding accounts receivable.

2.   The Insured agrees to use any suitable property or service:

(a) owned or controlled by the Insured; or

(b) obtainable from other sources,

in reducing the loss under this Additional Coverage.

3.   This Policy covers any other necessary and reasonable costs incurred to reduce the loss, to the extent the losses are reduced.

4.   If it is possible to reconstruct accounts receivable records so that no shortage is sustained, the Underwriters will be liable only for the reasonable and necessary cost incurred for material and time required to re-establish or reconstruct such records, and not for any costs covered by any other insurance.





**1263
ARM**

## MARKET REFORM CONTRACT

UMR: B1263EW0004816

5.   Accounts Receivable Exclusions:  The following exclusions are in addition to the Exclusions clause of this section:

This Additional Coverage does not insure against shortage resulting from:

(a)  bookkeeping, accounting or billing errors or omissions; or

(b)  (i)   alteration, falsification, manipulation; or

   (ii)  concealment, destruction or disposal,

of accounts receivable records committed to conceal the wrongful giving, taking, obtaining or withholding of money, securities or other property; but only to the extent of such wrongful giving, taking, obtaining or withholding.

6.   The settlement of loss will be made within 90 days from the date of physical loss or damage.  All amounts recovered by the Insured on outstanding accounts receivable on the date of loss will belong and be paid to the Underwriters up to the amount of loss paid by the Underwriters.  All recoveries exceeding the amount paid will belong to the Insured.

### AUTOMATIC COVERAGE

This Policy covers property of the type insured by this Policy at any Location rented, leased or purchased by the Insured after the inception date of this Policy. This coverage applies from the date of rental, lease or purchase.

This Additional Coverage does not apply to property insured in whole or in part by any other insurance policy.

This coverage will apply until whichever of the following occurs first:

1.   The Location is agreed to be insured by the Underwriters.

2.   Agreement is reached that the Location will not be insured under this Policy.

3.   The Time Limit specified in the Schedule has been reached.  The Time Limit begins on the date of rental, lease or purchase.

### BRANDS AND LABELS

If branded or labeled Property Insured by this Policy suffers insured physical damage and the Underwriters elect to take all or any part of that property, the Insured may at the Underwriters' expense:

1.   stamp "salvage" on the property or its containers; or

2.   remove or obliterate the brands or labels,

if doing so will not damage the property. In either event, the Insured must relabel such property or its containers to be in compliance with any applicable law.





**1263
ARM**

## MARKET REFORM CONTRACT

UMR: B1263EW0004816

### CONSEQUENTIAL REDUCTION IN VALUE

This Policy covers the reduction in value of insured merchandise that is a part of pairs, sets, or components, directly resulting from physical loss or damage insured by this Policy to other insured parts of pairs, sets or components of such merchandise.  If settlement is based on a constructive total loss, the Insured will surrender the undamaged parts of such merchandise to the Underwriters.

### CONTROL OF DAMAGED PROPERTY

This Policy gives control of insured property that suffers insured physical damage as follows:

1. The Insured will have full rights to the possession and control of damaged property in the event of insured physical damage to such property provided proper testing is done to show which property is physically damaged.

2. The Insured using reasonable judgment will decide if the physically damaged property can be reprocessed or sold.

3. Property so judged by the Insured to be unfit for reprocessing or selling will not be sold or disposed of except by the Insured, or with the Insured's consent.

4. Any salvage proceeds received will go to the:

   (a) Underwriters at the time of loss settlement; or

   (b) Insured if received prior to loss settlement and such proceeds will reduce the amount of loss payable accordingly.

### DEBRIS REMOVAL

This Policy covers the reasonable and necessary costs incurred to remove debris from an Insured Location that remains as a direct result of physical loss or damage insured by this Policy.

This Additional Coverage does not cover the costs of removal of:

1. contaminated uninsured property; or

2. the contaminant in or on uninsured property,

whether or not the contamination results from insured physical loss or damage. Contamination includes, but is not limited to, the presence of pollution or hazardous material.

### DECONTAMINATION COSTS

If insured property is contaminated as a direct result of physical damage insured by this Policy and there is in force at the time of the loss any law or ordinance regulating contamination, including but not limited to the presence of pollution or hazardous material, then this Policy covers, as a direct result of enforcement of such law or ordinance, the increased cost of decontamination and/or removal of such contaminated insured property in a manner to satisfy such law or ordinance.  This Additional Coverage applies only to that part of insured property so contaminated as a direct result of insured physical damage.

The Underwriters are not liable for the costs required for removing contaminated uninsured property nor the contaminant therein or thereon, whether or not the contamination results from an insured event.



**1263**
**ARM**



### MARKET REFORM CONTRACT

UMR: B1263EW0004816

#### DEFERRED PAYMENTS

This Policy covers insured physical loss or damage to Personal Property of the type insured by this Policy sold by the Insured under a conditional sale or trust agreement or any installment or deferred payment plan and after such property has been delivered to the buyer. Coverage is limited to the unpaid balance for such property.

In the event of such loss to property sold under deferred payment plans, the Insured will use all reasonable efforts, including legal action, if necessary, to effect collection of outstanding amounts due or to regain possession of the property.

There is no liability under this Policy for loss:

1.  pertaining to products recalled including, but not limited to, the costs to recall, test or to advertise such recall by the Insured.

2.  from theft or conversion by the buyer of the property after the buyer has taken possession of such property.

3.  to the extent the buyer continues payments.

4.  not within the Territory of this Policy.

#### DEMOLITION AND INCREASED COST OF CONSTRUCTION

1.  This Policy covers the reasonable and necessary costs incurred, described in item 3 below, to satisfy the minimum requirements of the enforcement of any law or ordinance regulating the demolition, construction, repair, replacement or use of buildings or structures at an Insured Location, provided:

    (a)  such law or ordinance is in force on the date of insured physical loss or damage; and

    (b)  its enforcement is a direct result of such insured physical loss or damage.

2.  This Additional Coverage does not cover loss due to any law or ordinance with which the Insured was required to comply had the loss not occurred.

3.  This Additional Coverage, as respects the property insured in item 1 above, covers:

    (a)  the cost to repair or rebuild the physically damaged portion of such property with materials and in a manner to satisfy such law or ordinance; and

    (b)  the cost:

        (i)   to demolish the physically undamaged portion of such Property Insured; and

        (ii)  to rebuild it with materials and in a manner to satisfy such law or ordinance,

        to the extent that such costs result when the demolition of the physically damaged insured property is required to satisfy such law or ordinance.

4.  This Additional Coverage excludes any costs incurred as a direct or indirect result of enforcement of any laws or ordinances regulating any form of contamination including but not limited to the presence of pollution or hazardous material.



 ALESCO

**1263**
**ARM**

**MARKET REFORM CONTRACT**

UMR: B1263EW0004816

5. The Underwriters' maximum liability for this Additional Coverage at each Insured Location in any Occurrence will not exceed the actual cost incurred in demolishing the physically undamaged portion of the property insured in item 1 above plus the lesser of:

(a) the reasonable and necessary actual cost incurred, excluding the cost of land, in rebuilding on another site; or

(b) the cost of rebuilding on the same site.

## EARTH MOVEMENT

This Policy covers physical loss or damage caused by or resulting from Earth Movement.

The term Earth Movement wherever used in this Policy means any natural or man-made earth movement including, but not limited to earthquake, seaquake, volcanic eruption, landslide or subsidence and any ensuing tsunami, regardless of any other cause or event contributing concurrently or in any other sequence of loss. However, physical damage by fire, explosion, or sprinkler leakage resulting from Earth Movement will not be considered to be loss by Earth Movement within the terms and conditions of this Policy.

## ERRORS AND OMISSIONS

If physical loss or damage is not payable under this Policy solely due to an error or unintentional omission:

1. in the description of where insured property is physically located;

2. to include any Location:

(a) owned, rented or leased by the Insured on the effective date of this Policy; or

(b) purchased, rented or leased by the Insured during the term of this Policy; or

3. that results in cancellation of the property insured under this Policy;

this Policy covers such physical loss or damage, to the extent it would have provided coverage had such error or unintentional omission not been made.

It is a condition of this Additional Coverage that any error or unintentional omission be reported by the Insured to the Underwriters when discovered and corrected.

## EXPEDITING COSTS

This Policy covers the reasonable and necessary costs incurred to pay for the temporary repair of insured damage to insured property and to expedite the permanent repair or replacement of such damaged property.

This Additional Coverage does not cover costs:

1. recoverable elsewhere in this Policy; or

2. of permanent repair or replacement of damaged property.





**1263
ARM**

## MARKET REFORM CONTRACT

UMR: B1263EW0004816

### FINE ARTS

This Policy covers insured physical loss or damage to Fine Arts articles while anywhere within this Policy's Territory, including while in transit.

1. This Additional Coverage excludes loss or damage if the Fine Arts cannot be replaced with other of like kind and quality, unless it is specifically declared to the Underwriters.

2. Fine Arts Exclusion:

   In addition to the exclusions in the Exclusions clause of this section, as respects Fine Arts, this Policy does not insure against loss or damage from any repairing, restoration or retouching process.

3. The term Fine Arts wherever used in this Policy means paintings; etchings; pictures; tapestries; rare or art glass; art glass windows; valuable rugs; statuary; sculptures; antique furniture; antique jewelry; bric-a-brac; porcelains; and similar property of rarity, historical value, or artistic merit excluding automobiles, coins, stamps, furs, jewelry, precious stones, precious metals, watercraft, aircraft, money, securities.

### FLOOD

This Policy covers physical loss or damage caused by or resulting from Flood.

The term Flood wherever used in this Policy means flood; rising waters; waves; tide or tidal water; the release of water, the rising, overflowing or breaking of boundaries of natural or man-made bodies of water; or the spray therefrom, surface waters or sewer back-up resulting from any of the foregoing; regardless of any other cause or event contributing concurrently or in any other sequence of loss. However, physical damage by fire, explosion or sprinkler leakage resulting from Flood is not considered to be loss by Flood within the terms and conditions of this Policy.

### LAND AND WATER CONTAMINANT OR POLLUTANT CLEANUP, REMOVAL AND DISPOSAL

This Policy covers the reasonable and necessary cost for the cleanup, removal and disposal of contaminants or pollutants from uninsured property consisting of land, water or any other substance in or on land at the Insured Location if the release, discharge or dispersal of contaminants or pollutants is a direct result of insured physical loss or damage to insured property.

This Policy does not cover the cost to cleanup, remove and dispose of contaminants or pollutants from such property:

1. at any location insured for Personal Property only.

2. at any property insured under Automatic Coverage, Errors And Omissions or Miscellaneous Unnamed Location coverage provided by this Policy.

3. when the Insured fails to give written notice of loss to the Underwriters within 180 days after inception of the loss.

### PROFESSIONAL FEES

This Policy covers the actual costs incurred by the Insured of reasonable fees payable to the Insured's accountants, architects, auditors, engineers, or other professionals and the cost of using the Insured's employees, for producing and certifying any particulars or details contained in the Insured's books or documents, or such other proofs, information or evidence required by the Underwriters resulting from insured loss payable under this Policy for which the Underwriters have accepted liability.





**1263
ARM**

### MARKET REFORM CONTRACT

UMR: B1263EW0004816

Coverage will not include the fees and costs of attorneys, public adjusters, and loss appraisers, all including any of their subsidiary, related or associated entities either partially or wholly owned by them or retained by them for the purpose of assisting them nor the fees and costs of loss consultants who provide consultation on coverage or negotiate claims.

### PROTECTION AND PRESERVATION OF PROPERTY

This Policy covers:

1. reasonable and necessary costs incurred for actions to temporarily protect or preserve insured property; provided such actions are necessary due to actual, or to prevent immediately impending, insured physical loss or damage to such insured property.

2. reasonable and necessary:

   (a) fire department fire fighting charges imposed as a result of responding to a fire in, on, or exposing the insured property.

   (b) costs incurred of restoring and recharging fire protection systems following an insured loss.

   (c) costs incurred for the water used for fighting a fire in, on or exposing the insured property.

This Additional Coverage is subject to the deductible provisions that would have applied had the physical loss or damage occurred.

### SERVICE INTERRUPTION PROPERTY DAMAGE

1. This Policy covers insured physical loss or damage to insured property at an Insured Location when such physical loss or damage results from the interruption of the specified incoming services consisting of electricity, gas, fuel, steam, water, refrigeration or from the lack of outgoing sewerage service by reason of physical loss or damage of the type insured by this Policy to property of the type insured by this Policy of the supplier of such service located within this Policy's Territory, that immediately prevents in whole or in part the delivery of such usable service.

2. Additional General Provisions:

   (a) The Insured will immediately notify the suppliers of services of any interruption of such services.

   (b) The Underwriters will not be liable if the interruption of such services is caused directly or indirectly by;

      (i) the failure of the Insured to comply with the terms and conditions of any contracts the Insured has for the supply of such specified services

      (ii) loss or damage to overhead transmission lines located beyond one mile from the affected Insured Location.

### TAX TREATMENT OF PROFITS

This Policy is extended to cover the increased tax liability from an insured loss at an Insured Location if the tax treatment of:

1. the profit portion of a loss payment under this Policy involving finished stock manufactured by the





**1263
ARM**

### MARKET REFORM CONTRACT

UMR: B1263EW0004816

Insured; and/or

2. the profit portion of a Time Element loss payment under this Policy;

is greater than the tax treatment of profits that would have been incurred had no loss occurred.

### TEMPORARY REMOVAL OF PROPERTY

1. When insured property is removed from an Insured Location for the purpose of being repaired or serviced or in order to avoid threatened physical loss or damage of the type insured by this Policy, this Policy covers such property:

    (a) while at the location to which such property has been moved; and

    (b) for physical loss or damage as provided at the Insured Location from which such property was removed.

2. This Additional Coverage does not apply to property:

    (a) insured, in whole or in part, elsewhere in this Policy.

    (b) insured, in whole or in part, by any other insurance policy.

    (c) removed for normal storage, processing or preparation for sale or delivery.

### TRANSPORTATION

1. This Policy covers the following Personal Property, except as excluded by this Policy, while in transit within the Territory of this Policy:

    (a) owned by the Insured.

    (b) shipped to customers under free on board, cost and freight or similar terms. The Insured's contingent interest in such shipments is admitted.

    (c) of others in the actual or constructive custody of the Insured to the extent of the Insured's interest or legal liability.

    (d) of others sold by the Insured, that the Insured has agreed prior to the loss to insure during course of delivery.

2. This Additional Coverage excludes:

    (a) samples in the custody of salespeople or selling agents.

    (b) property insured under import or export ocean marine insurance.

    (c) waterborne shipments, unless:

        (i)    by inland water; or

        (ii)   by coastal shipments.





**1263**
**ARM**

### MARKET REFORM CONTRACT

UMR: B1263EW0004816

(d)  airborne shipments unless by regularly scheduled passenger airlines or air freight carriers.

(e)  property of others, including the Insured's legal liability for it, hauled on vehicles owned, leased or operated by the Insured when acting as a common or contract carrier.

(f)  any transporting vehicle.

(g)  property shipped between continents.

3.  Coverage Attachment and Duration:

(a)  This Additional Coverage covers from the time the property leaves the original point of shipment for transit.  It then covers continuously in the due course of transit:

within the continent in which the shipment commences until the property arrives at the destination within such continent.

(b)  However, coverage on export shipments not insured under ocean cargo policies ends when the property is loaded on board overseas vessels or aircraft.  Coverage on import shipments not insured under ocean cargo policies begins after discharge from overseas vessels or aircraft.

4.  This Additional Coverage:

(a)  covers general average and salvage charges on shipments covered while waterborne.

(b)  insures physical loss or damage caused by or resulting from:

(i)  unintentional acceptance of fraudulent bills of lading, shipping or messenger receipts.

(ii)  improper parties having gained possession of property through fraud or deceit.

5.  Additional General Provisions:

(a)  This Additional Coverage will not inure directly or indirectly to the benefit of any carrier or bailee.

(b)  The Insured has permission, without prejudicing this Insurance, to accept:

(i)  ordinary bills of lading used by carriers;

(ii)  released bills of lading;

(iii)  undervalued bills of lading; and

(iv)  shipping or messenger receipts.

(c)  The Insured may waive subrogation against railroads under side track agreements.

Except as otherwise stated, the Insured will not enter into any special agreement with carriers releasing them from their common law or statutory liability.





**1263**
**ARM**

### MARKET REFORM CONTRACT

UMR: B1263EW0004816

#### VALUABLE PAPERS AND RECORDS

This Policy covers insured physical loss or damage to Valuable Papers and Records while anywhere within this Policy's Territory, including while in transit.

1. This Additional Coverage excludes loss or damage to:

    (a) property described below, if such property cannot be replaced with other of like kind and quality, unless specifically declared to the Underwriters.

    (b) currency, money or securities.

    (c) property held as samples or for sale or for delivery after sale.

2. Valuable Papers and Records Exclusions:

    In addition to the exclusions in the Exclusions clause of this section, as respects Valuable Papers And Records, this Policy does not insure errors or omissions in processing, or copying; all unless physical damage not excluded by this Policy results, in which event, only that resulting damage is insured.

3. The term Valuable Papers and Records wherever used in this Policy means written, printed or otherwise inscribed documents and records, including books, maps, films, drawings, abstracts, deeds, mortgages and manuscripts, all of which must be of value to the Insured.

#### APPLICATION OF POLICY TO DATE OR TIME RECOGNITION

A. With respect to situations caused by any Date or Time Recognition problem by Electronic Data Processing Equipment or Media, this Policy applies as follows.

    1. This Policy does not pay for remediation, change, correction, repair or assessment of any Date or Time Recognition problem in any Electronic Data Processing Equipment or Media, whether preventative or remedial, and whether before or after a loss, including temporary protection and preservation of property. This Policy does not pay for any Time Element loss resulting from the foregoing remediation, change, correction, repair or assessment.

    2. Failure of Electronic Data Processing Equipment or Media to correctly recognize, interpret, calculate, compare, differentiate, sequence, access or process data involving one or more dates or times is not physical loss or damage insured against by this Policy. This Policy does not pay for any such incident or for any Time Element loss resulting from any such incident.

    Subject to all of its terms and conditions, this Policy does pay for physical loss or damage not excluded by this Policy that results from a failure of Electronic Data Processing Equipment or Media to correctly recognize, interpret, calculate, compare, differentiate, sequence, access or process data involving one or more dates or times. Such covered resulting physical loss or damage does not include any loss, cost or expense described in 1 or 2 above. If such covered resulting physical loss or damage occurs, and if this Policy provides Time Element coverage, then, subject to all of its terms and conditions, this Policy also covers any insured Time Element loss directly resulting therefrom.

B. The following term(s) wherever used in this Policy mean(s):

    1. Date or Time Recognition:

        The recognition, interpretation, calculation, comparison, differentiation, sequencing, accessing or processing of data involving one or more dates or times.



 ALESCO

**1263
ARM**

## MARKET REFORM CONTRACT

UMR: B1263EW0004816

2. Electronic Data Processing Equipment or Media:

Any computer, computer system or component, hardware, network, microprocessor, microchip, integrated circuit or similar devices or components in computer or non-computer equipment, operating systems, data, programs or other software stored on electronic, electro-mechanical, electro-magnetic data processing or production equipment, whether the property of the Insured or not.

### APPLICATION OF THIS POLICY TO ASBESTOS

A. This Policy only covers asbestos physically incorporated in an insured building or structure, and then only that part of the asbestos which has been physically damaged during the Period of Insurance by one of these Listed Perils:

fire; explosion; lightning; windstorm; hail; direct impact of vehicle, aircraft or vessel; riot or civil commotion, vandalism or malicious mischief; or accidental discharge of fire protective equipment.

This additional coverage is subject to each of the following specific limitations:

1. The said building or structure must be insured under this Policy for damage by that Listed Peril.

2. The Listed Peril must be the immediate, sole cause of the damage of the asbestos.

3. The Insured must report to the Underwriters the existence and cost of the damage as soon as practicable after the Listed Peril first damaged the asbestos.  However, this Policy does not insure any such damage first reported to the Underwriters more than 12 months after the expiration, or termination, of the Period of Insurance.

4. This additional coverage does not include any sum relating to:

   (i) any faults in the design, manufacture or installation of the asbestos;

   (ii) asbestos not physically damaged by the Listed Peril including any governmental or regulatory authority direction or request of whatsoever nature relating to undamaged asbestos.

B. Except as set forth in the foregoing Section A, this Policy does not insure asbestos or any sum relating thereto.

### APPLICATION OF THIS POLICY TO ELECTRONIC DATA

A. This Policy does not insure loss, damage, destruction, distortion, erasure, corruption or alteration of Electronic Data from any cause whatsoever (including but not limited to Computer Virus) or loss of use, reduction in functionality, cost, expense of whatsoever nature resulting therefrom, regardless of any other cause or event contributing concurrently or in any other sequence to the loss.

Electronic Data means facts, concepts and information converted to a form useable for communications, interpretation or processing by electronic and electromechanical data processing or electronically controlled equipment and includes programmes, software and other coded instructions for the processing and manipulation of data or the direction and manipulation of such equipment.

Computer Virus means a set of corrupting, harmful or otherwise unauthorised instructions or code including a set of maliciously introduced unauthorised instructions or code, programmatic or otherwise, that propagate themselves through a computer system or network of whatsoever nature. Computer Virus includes but is not limited to 'Trojan Horses', 'worms' and 'time or logic bombs'.





**1263**
**ARM**

### MARKET REFORM CONTRACT

UMR: B1263EW0004816

B.   However, in the event that a peril listed below results from any of the matters described in paragraph a) above, this Policy, subject to all its terms, conditions and exclusions, will cover physical damage occurring during the Policy period to Property Insured by this Policy directly caused by such listed peril.

Listed Perils

Fire
Explosion

### ELECTRONIC DATA PROCESSING MEDIA VALUATION

Should electronic data processing media insured by this Policy suffer physical loss or damage insured by this Policy, then the basis of valuation shall be the cost to repair, replace or restore such media to the condition that existed immediately prior to such loss or damage, including the cost of reproducing any Electronic Data contained thereon, providing such media is repaired, replaced or restored. Such cost of reproduction shall include all reasonable and necessary amounts incurred by the Insured in recreating, gathering and assembling such Electronic Data (Data Reproduction Cost). If the media is not repaired, replaced or restored the basis of valuation shall be the cost of the blank media. However this Policy does not insure any amount pertaining to the value of such Electronic Data to the Insured or any other party, even if such Electronic Data cannot be recreated, gathered or assembled.

### EXCLUSIONS

The following exclusions apply unless specifically stated elsewhere in this Policy:

A.   This Policy excludes:

1.   indirect or remote loss or damage.

2.   interruption of business, except to the extent provided by this Policy.

3.   loss of market or loss of use.

4.   loss or damage or deterioration arising from any delay.

5.   mysterious disappearance, loss or shortage disclosed on taking inventory, or any unexplained loss.

6.   loss from enforcement of any law or ordinance:

(a)   regulating the construction, repair, replacement, use or removal, including debris removal, of any property; or

(b)   requiring the demolition of any property, including the cost in removing its debris;

except as provided by the Decontamination Costs and Demolition And Increased Cost Of Construction coverages of this section of this Policy.

7.   loss, damage, cost or expense incurred by the Insured or by others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of the Insured's products in the stream of commerce or the products of the Insured's direct or indirect customers or suppliers if such product or any portion of it is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy, contamination or dangerous condition.





**1263**
**ARM**

### MARKET REFORM CONTRACT

UMR: B1263EW0004816

B.  This Policy excludes loss, damage, cost or expense of whatsoever nature directly or indirectly caused by, resulting from or in connection with the actual or threatened malicious use of pathogenic or poisonous biological or chemical materials regardless of any other cause or event contributing concurrently or in any other sequence thereto.

C.  This Policy excludes loss, damage, cost or expense of whatsoever nature, directly or indirectly caused by, resulting from or in connection with any of the following regardless of any other cause or event, whether or not insured under this Policy, contributing concurrently or in any other sequence to the loss:

1.  any act of terrorism.

    For the purpose of this exclusion an act of terrorism means an act, including but not limited to the use of force or violence and/or the threat thereof, of any person or group(s) of persons, whether acting alone or on behalf of or in connection with any organisation(s) or government(s), committed for political, religious, ideological or similar purposes including the intention to influence any government and/or to put the public, or any section of the public, in fear.

    This Policy also excludes loss, damage, cost or expense of whatsoever nature directly or indirectly caused by, resulting from or in connection with any action taken in controlling, preventing, suppressing or in any way relating to any act of terrorism.

    If the Underwriters allege that by reason of this exclusion, any loss, damage, cost or expense is not covered by this Policy the burden of proving the contrary shall be upon the Insured.

2.  nuclear reaction or nuclear radiation or radioactive contamination.  However:

    (a) if physical damage by fire or sprinkler leakage results, then only that resulting damage is insured; but not including any loss or damage due to nuclear reaction, nuclear radiation or radioactive contamination.

    (b) this Policy does insure physical damage directly caused by sudden and accidental radioactive contamination, including resultant radiation damage, from material used or stored or from processes conducted on the Insured Location, provided that on the date of loss, there is neither a nuclear reactor nor any new or used nuclear fuel on the Insured Location.

3.  (a) hostile or warlike action in time of peace or war, including action in hindering, combating or defending against an actual, impending or expected attack by any:

    (i)    government or sovereign power (de jure or de facto);

    (ii)   military, naval or air force; or

    (iii)  agent or authority of any party specified in i or ii above.

    (b) discharge, explosion or use of any nuclear device, weapon or material employing or involving nuclear fission, fusion or radioactive force, whether in time of peace or war and regardless of who commits the act.

    (c) insurrection, rebellion, revolution, civil war, usurped power, or action taken by governmental authority in hindering, combating or defending against such an event.

    (d) seizure or destruction under quarantine or custom regulation, or confiscation by order of any governmental or public authority.





**1263
ARM**

## MARKET REFORM CONTRACT

UMR: B1263EW0004816

    (e) risks of contraband, or illegal transportation or trade.

4. any dishonest act, including but not limited to theft, committed alone or in collusion with others, at any time:

    (a) by an Insured or any proprietor, partner, director, trustee, officer, or employee of an Insured; or

    (b) by any proprietor, partner, director, trustee, or officer of any business or entity (other than a common carrier) engaged by an Insured to do anything in connection with Property Insured under this Policy.

This Policy does insure acts of direct insured physical damage intentionally caused by an employee of an Insured or any individual specified in b above, and done without the knowledge of the Insured. In no event does this Policy cover loss by theft by any individual specified in (a) or (b) above.

5. lack of the following services:

    (a) incoming electricity, fuel, water, gas, steam, refrigerant;

    (b) outgoing sewerage;

    (c) incoming or outgoing voice, data or video,

    all when caused by an Occurrence off the Insured Location, except as provided in Service Interruption in the Property Damage or Time Element section of this Policy.

D. This Policy excludes the following, but, if physical damage not excluded by this Policy results, then only such resulting damage is insured:

1. faulty workmanship, material, construction or design from any cause.

2. loss or damage to stock or material attributable to manufacturing or processing operations while such stock or material is being processed, manufactured, tested, or otherwise worked on.

3. deterioration, depletion, rust, corrosion or erosion, wear and tear, inherent vice or latent defect.

4. settling, cracking, shrinking, bulging, or expansion of:

    (a) foundations (including any pedestal, pad, platform or other property supporting machinery).

    (b) floors.

    (c) pavements.

    (d) walls.

    (e) ceilings.

    (f) roofs.

5. (a) changes of temperature damage (except to machinery or equipment); or

    (b) changes in relative humidity damage,



 ALESCO

**1263**
**ARM**

### MARKET REFORM CONTRACT

UMR: B1263EW0004816

all whether atmospheric or not.

   6.  insect, animal or vermin damage.

E.  This Policy excludes the following unless directly resulting from other physical damage not excluded by this Policy:

   1.  contamination including but not limited to the presence of pollution or hazardous material.

   2.  shrinkage.

   3.  changes in color, flavor, texture or finish.

F.  This Policy excludes any loss, damage, claim, cost, expense or other sum directly or indirectly arising out of or relating to:

mold, mildew, fungus, spores or other microorganism of any type, nature, or description, including but not limited to any substance whose presence poses an actual or potential threat to human health.

This Exclusion applies regardless whether there is (i) any physical loss or damage to Property Insured; (ii) any insured peril or cause, whether or not contributing concurrently or in any sequence; (iii) any loss of use, occupancy, or functionality; or (iv) any action required, including but not limited to repair, replacement, removal, cleanup, abatement, disposal, relocation, or steps taken to address medical or legal concerns.

### TIME ELEMENT - SECTION D

### LOSS INSURED

A.  This Policy insures Time Element loss, as provided in the Time Element Coverages, directly resulting from physical loss or damage insured by this Policy occurring during the Period of Insurance to Property Insured by this Policy.

B.  This Policy insures Time Element loss only to the extent it cannot be reduced through:

   1.  the use of any property or service owned or controlled by the Insured;

   2.  the use of any property or service obtainable from other sources;

   3.  working extra time or overtime; or

   4.  the use of inventory,

all whether at an Insured Location or at any other location. The Underwriters reserve the right to take into consideration the combined operating results of all associated, affiliated or subsidiary companies of the Insured in determining the Time Element loss.

C.  This Policy covers expenses reasonably and necessarily incurred by the Insured to reduce the loss otherwise payable under this section of this Policy. The amount of such recoverable expenses will not exceed the amount by which the loss has been reduced.

D.  Except as respects Leasehold Interest, in determining the amount of loss payable, the Underwriters will consider the experience of the business before and after and the probable experience during the Period





**1263
ARM**

### MARKET REFORM CONTRACT

UMR: B1263EW0004816

of Liability.

### TIME ELEMENT COVERAGES

### GROSS EARNINGS

1.  Measurement of Loss:

    (a) The recoverable Gross Earnings loss is the Actual Loss Sustained by the Insured of the following during the Period of Liability:

        (i)      Gross Earnings;

        (ii)    less all charges and expenses that do not necessarily continue during the interruption of production or suspension of business operations or services;

        (iii)   plus all other earnings derived from the operation of the business.

    (b) In determining the indemnity payable as the Actual Loss Sustained, the Underwriters will consider the continuation of only those normal charges and expenses (including up to 30 days Ordinary Payroll) that would have been earned had no interruption of production or suspension of business operations or services occurred.

    (c) There is recovery hereunder but only to the extent that the Insured is:

        (i)      wholly or partially prevented from producing goods or continuing business operations or services;

        (ii)    unable to make up lost production within a reasonable period of time, not limited to the period during which production is interrupted;

        (iii)   unable to continue such operations or services during the Period of Liability; and

        (iv)   able to demonstrate a loss of sales for the operations, services or production prevented.

2.  The following term(s) mean(s):

    Gross Earnings, as used in item 1a)(i):

    (a) for manufacturing operations: the net sales value of production less the cost of all raw stock, materials and supplies used in such production; or

    (b) for mercantile or non-manufacturing operations: the total net sales less cost of merchandise sold, materials and supplies consumed in the operations or services rendered by the Insured.

    Any amount recovered under property damage coverage at selling price for loss or damage to merchandise will be considered to have been sold to the Insured's regular customers and will be credited against net sales.

    Ordinary Payroll, as used in item 1b):

    the entire payroll expense for all employees of the insured except officers, executives, department managers and employees under contract.





**1263
ARM**

### MARKET REFORM CONTRACT

UMR: B1263EW0004816

### EXTRA EXPENSE

1.  Measurement of Loss:

    The recoverable Extra Expense loss will be the reasonable and necessary extra costs incurred by the Insured of the following during the Period of Liability:

    (a) Extra expenses to temporarily continue as nearly normal as practicable the conduct of the Insured's business; and

    (b) Extra costs of temporarily using property or facilities of the Insured or others,

    less any value remaining at the end of the Period of Liability for property obtained in connection with the above.

2.  Extra Expense Exclusions:  As respects Extra Expense, the following are also excluded:

    (a) Any loss of income.

    (b) Costs that normally would have been incurred in conducting the business during the same period had no physical loss or damage occurred.

    (c) Cost of permanent repair or replacement of property that has been damaged or destroyed.

    (d) Any expense recoverable elsewhere in this Policy.

3.  The term Normal means the condition that would have existed had no physical loss or damage occurred.

### LEASEHOLD INTEREST

1.  Measurement of Loss:

    The recoverable Leasehold Interest incurred by the Insured of the following:

    (a) If the lease agreement requires continuation of rent, and if the property is wholly untenantable or unusable, the actual rent payable for the unexpired term of the lease; or if the property is partially untenantable or unusable, the proportion of the rent payable for the unexpired term of the lease.

    (b) If the lease is canceled by the lessor pursuant to the lease agreement or by the operation of law, the Lease Interest for the first 3 (three) months following the loss, and the Net Lease Interest for the remaining unexpired term of the lease.

2.  The following term(s) mean(s):

    (a) Lease Interest:

    The excess rent paid for the same or similar replacement property over actual rent payable plus cash bonuses or advance rent paid (including maintenance or operating charges) for each month during the unexpired term of the Insured's lease.

    (b) Net Lease Interest:

    That sum which placed at 6% (six per cent) interest rate compounded annually would equal the



**1263**
**ARM**

## MARKET REFORM CONTRACT

UMR: B1263EW0004816

Lease Interest (less any amounts otherwise payable hereunder).

3. Leasehold Interest Exclusions: As respects Leasehold Interest, Time Element Exclusions A, B, and C do not apply and the following applies instead:

This Policy does not insure any increase in loss resulting from the suspension, lapse or cancellation of any license, or from the Insured exercising an option to cancel the lease; or from any act or omission of the Insured that constitutes a default under the lease.

In addition, there is no coverage for the Insured's loss of Leasehold Interest directly resulting from physical loss or damage to Personal Property.

### RENTAL INSURANCE

1. Measurement of Loss:

The recoverable Rental Insurance loss is the Actual Loss Sustained by the Insured of the following during the Period of Liability:

(a) The fair rental value of any portion of the property occupied by the Insured;

(b) The income reasonably expected from rentals of unoccupied or unrented portions of such property; and

(c) The rental income from the rented portions of such property according to bona fide leases, contracts or agreements in force at the time of loss,

all not to include non-continuing charges and expenses.

2. Rental Insurance Exclusions:  As respects Rental Insurance, Time Element Exclusions A does not apply and the following applies instead:

A. This Policy does not insure any loss of rental income during any period in which the insured property would not have been tenantable for any reason other than an insured loss.

### COMMISSIONS, PROFITS AND ROYALTIES

1. Measurement of Loss:

(a) The recoverable Commissions, Profits And Royalties loss is the Actual Loss Sustained by the Insured of the following during the Period of Liability:

(i)  Commissions, Profits and Royalties;

(ii)  Less non-continuing expenses and charges during the Period of Liability.

(b) The Commissions, Profits And Royalties payable hereunder will be the Actual Loss Sustained of income to the Insured during the Period of Liability under any royalty, licensing fee or commission agreement between the Insured and another party which is not realizable due to physical loss or damage insured by this Policy to property of the other party of the type insured by this Policy located within the Policy's Territory.

(c) The Insured will influence, to the extent possible, said party(ies) with whom the agreements





**1263**
**ARM**

## MARKET REFORM CONTRACT

### UMR: B1263EW0004816

described above have been made to use any other machinery, supplies or locations in order to resume business so as to reduce the amount of loss hereunder, and the Insured will cooperate with that party in every way to effect this. This Policy does not cover any cost to effect the above unless authorized in advance by the Underwriters.

(d) In determining the indemnity payable hereunder, the Underwriters will consider the amount of income derived from such agreements before and the probable amount of income after the date of loss or damage.

(e) There is recovery hereunder but only if such loss or damage interrupts the delivery of goods in whole or in part to the Insured or for their account.

2. Commissions, Profits And Royalties Exclusions: As respects Commissions, Profits And Royalties, Time Element Exclusions C does not apply.

3. The following term(s) mean(s):

(a) Commissions:

The income that would have been received by the Insured from the sale of goods not owned by the Insured.

(b) Profits:

The amount that would have been received by the Insured from the sale of goods belonging to the Insured, in excess of the cost to the Insured of such goods.

(c) Royalties:

The income the Insured is not able to collect under royalty or licensing agreements.

### TIME ELEMENT COVERAGE EXTENSIONS

### CONTINGENT TIME ELEMENT

This Policy covers the Actual Loss Sustained and Extra Expense incurred by the Insured during the Period of Liability:

1. directly resulting from physical loss or damage of the type insured by this Policy; and

2. to property of the type insured by this Policy,

at any locations of direct suppliers or customers located within the Territory of this Policy.

The term "suppliers or customers" does not include any company supplying to or receiving from the Insured Location, as described elsewhere in this Policy, electricity, fuel, gas, water, steam, refrigeration, or sewage.

Contingent Time Element Exclusion: As respects Contingent Time Element, this Policy does not insure loss resulting from lack of incoming or outgoing transmission of voice, data or video.



 ALESCO

**1263**
**ARM**

### MARKET REFORM CONTRACT

UMR: B1263EW0004816

#### EXTENDED PERIOD OF LIABILITY

The Gross Earnings coverage is extended to cover the reduction in sales:

1. resulting from the interruption of business as covered by Gross Earnings;

2. for such additional length of time as would be required with the exercise of due diligence and dispatch to restore the Insured's business to the condition that would have existed had no loss occurred; and

3. commencing with the date on which the liability of the Underwriters for loss resulting from interruption of business would terminate if this Extension had not been included herein.

Extended Period of Liability Exclusions:  As respects Extended Period of Liability, the Time Element Exclusions B of this section does not apply and the following applies instead:

This Policy does not insure against any increase in loss due to fines or damages for breach of contract or for late or non completion of orders, or penalties of any nature.

Coverage under this Extension for the reduction in sales due to contract cancellation will include only those sales that would have been earned under the contract during the extended Period of Liability.

Coverage under this Extension does not apply for more than the number of consecutive days specified in the Schedule.

#### INGRESS/EGRESS

This Policy covers the Actual Loss Sustained and Extra Expense incurred by the Insured due to the necessary interruption of the Insured's business due to prevention of ingress to or egress from an Insured Location, whether or not the premises or property of the Insured is damaged, provided that such prevention is a direct result of physical damage of the type insured by this Policy, to the kind of property not excluded by this Policy situated within one mile of the Insured Location.

Ingress/Egress Exclusions: As respects Ingress/Egress, the following exclusions are applicable:

This Policy does not insure loss resulting from:

1. lack of incoming or outgoing service consisting of electric, fuel, gas, water, steam, refrigerant, sewerage and voice, data or video.

2. picketing or other action by strikers except for physical damage not excluded by this Policy.

This Policy does not provide coverage under this Extension for more than the number of consecutive days specified in the Schedule.

#### CIVIL OR MILITARY AUTHORITY

This Policy covers the Actual Loss Sustained and Extra Expense incurred by the Insured due to the necessary interruption of the Insured's business due to prevention of access to the Insured Location by order of a civil or military authority, provided that such order is a direct result of physical damage of the type insured by this Policy, to the kind of property not excluded by this Policy situated within 1 (one) mile of the Insured Location.





**1263
ARM**

## MARKET REFORM CONTRACT

### UMR: B1263EW0004816

This Policy does not provide coverage under this Extension for more than the number of consecutive days specified in the Schedule.

### ON PREMISES SERVICES

This Policy covers the Actual Loss Sustained and Extra Expense incurred by the Insured during the Period of Liability directly resulting from physical loss or damage of the type insured by this Policy to the following property located within 1,000 (one thousand) feet of the Insured Location:

1. Electrical equipment and equipment used for the transmission of voice, data or video.

2. Electrical, fuel, gas, water, steam, refrigeration, sewerage, voice, data or video transmission lines.

### PROTECTION AND PRESERVATION OF PROPERTY -- TIME ELEMENT

This Policy covers the Actual Loss Sustained by the Insured for a period of time not to exceed 48 (forty-eight) hours after the Insured first taking reasonable action for the temporary protection and preservation of Property Insured by this Policy provided such action is necessary to prevent immediately impending physical loss or damage insured by this Policy at such insured property.

This Extension is subject to the deductible provisions that would have applied had the physical loss or damage occurred.

### RELATED REPORTED VALUES

If reported Time Element values include:

1. locations used by the Insured (such as branch stores, sales outlets and other plants) but not listed on a schedule under this Policy; and

2. a Time Element loss would result at such locations,

3. from insured physical loss or damage at an Insured Location,

then this Policy provides coverage for such resulting Time Element loss in accordance with the coverage applicable at such Insured Location.

### RESEARCH AND DEVELOPMENT

The Gross Earnings coverage is extended to insure the Actual Loss Sustained by the Insured of continuing fixed charges and Ordinary Payroll directly attributable to the interruption of research and development activities, that in themselves would not have produced income during the Period of Liability.

The Period of Liability for this Time Element Coverage Extension will be the period from the time of direct physical loss or damage of the type insured by this Policy to the time when the property could be repaired or replaced and made ready for operations, but not to be limited by the date of expiration of this Policy.

### SERVICE INTERRUPTION TIME ELEMENT

1. This Policy covers the Actual Loss Sustained and Extra Expense incurred by the Insured during the Period of Service Interruption at Insured Locations when the loss is caused by the interruption of incoming services consisting of electricity, gas, fuel, steam, water, refrigeration or from the lack of outgoing sewerage service by reason of physical loss or damage of the type insured by this Policy to





**1263**
**ARM**

## MARKET REFORM CONTRACT

UMR: B1263EW0004816

property of the type insured by this Policy of the supplier of such service located within this Policy's Territory, that immediately prevents in whole or in part the delivery of such usable services.

2.  This Extension will apply when the Period of Service Interruption is in excess of the time specified in the Schedule as Waiting Period.

3.  Additional General Provisions:

    (a) The Insured will immediately notify the suppliers of services of any interruption of such services.

    (b) The Underwriters will not be liable if the interruption of such services is caused directly or indirectly by:

        (i)  the failure of the Insured to comply with the terms and conditions of any contracts the Insured has for the supply of such specified services

        (ii) loss or damage to overhead transmission lines located beyond one mile from the affected Insured location.

4.  The term Period of Service Interruption means:

    (i)   The period starting with the time when an interruption of specified services occurs; and ending when with due diligence and dispatch the service could be wholly restored and the Location receiving the service could or would have resumed normal operations following the restorations of service under the same or equivalent physical and operating conditions as provided by the Period of Liability clause in this section.

    (ii)  The Period of Service Interruption is limited to only those hours during which the Insured would or could have used services(s) if it had been available.

    (iii) The Period of Service Interruption does not extend to include the interruption of operations caused by any reason other than interruption of the specified service(s).

## PERIOD OF LIABILITY

A.  The Period of Liability applying to all Time Element Coverages, except Leasehold Interest and as shown below, or if otherwise provided under the Time Element Coverage Extensions, is as follows:

    1.  For building and equipment, the period:

        (a) starting from the time of physical loss or damage of the type insured against; and

        (b) ending when with due diligence and dispatch the building and equipment could be:

            (i)  repaired or replaced; and

            (ii) made ready for operations,

        under the same or equivalent physical and operating conditions that existed prior to the damage, irrespective of the date of expiration of this Policy.





**1263**
**ARM**

**MARKET REFORM CONTRACT**

UMR: B1263EW0004816

2.  For building and equipment under construction:

    (a)  the equivalent of the above period of time will be applied to the level of business that would have been reasonably achieved after construction and startup would have been completed had no physical damage happened; and

    (b)  due consideration will be given to the actual experience of the business compiled after completion of the construction and startup.

    This item does not apply to Commissions, Profits And Royalties.

3.  For stock-in-process and mercantile stock, including finished goods not manufactured by the Insured, the time required with the exercise of due diligence and dispatch:

    (a)  to restore stock in process to the same state of manufacture in which it stood at the inception of the interruption of production or suspension of business operations or services; and

    (b)  to replace physically damaged mercantile stock.

    This item does not apply to Rental Insurance.

4.  For raw materials and supplies, the period of time:

    (a)  of actual interruption of production or suspension of operations or services resulting from the inability to get suitable raw materials and supplies to replace similar ones damaged; but

    (b)  limited to that period for which the damaged raw materials and supplies would have supplied operating needs.

5.  If water:

    (a)  used for any manufacturing purpose, including but not limited to as a raw material or for power;

    (b)  stored behind dams or in reservoirs; and

    (c)  on any Insured Location,

    is released as the result of physical damage of the type insured against under this Policy to such dam, reservoir or connected equipment, the Underwriters' liability for the actual interruption of production or suspension of operations or services due to inadequate water supply will not extend beyond 30 consecutive days after the damaged dam, reservoir or connected equipment has been repaired or replaced.

    This item does not apply to Rental Insurance.

6.  For physically damaged exposed films, records, manuscripts and drawings, the time required to copy from backups or from originals of a previous generation.  This time does not include research, engineering or any other time necessary to restore or recreate lost information.

    This item does not apply to Rental Insurance.



**1263**
**ARM**

### MARKET REFORM CONTRACT

UMR: B1263EW0004816

B.  The Period of Liability does not include any additional time due to the Insured's inability to resume operations for any reason, including but not limited to:

  1.  making changes to equipment.

  2.  making changes to the buildings or structures except as provided in the Demolition And Increased Cost Of Construction clause in the Property Damage section.

  3.  restaffing or retraining employees.

  If two or more Periods of Liability apply such periods will not be cumulative.

### TIME ELEMENT EXCLUSIONS

In addition to the exclusions elsewhere in this Policy, the following exclusions apply to Time Element loss:

This Policy does not insure against:

A.  Any loss during any idle period, including but not limited to when production, operation, service or delivery or receipt of goods would cease, or would not have taken place or would have been prevented due to:

  1.  physical loss or damage not insured by this Policy on or off the Insured Location.

  2.  planned or rescheduled shutdown.

  3.  strikes or other work stoppage.

  4.  any other reason other than physical loss or damage insured by this Policy.

B.  Any increase in loss due to:

  1.  suspension, cancellation or lapse of any lease, contract, license or orders.

  2.  fines or damages for breach of contract or for late or non-completion of orders.

  3.  for penalties of any nature.

  4.  any other consequential or remote loss.

C.  Any loss resulting from loss or damage to finished goods manufactured by the Insured, nor the time required for their reproduction.

### TIME ELEMENT INTERDEPENDENCY

If there is a loss at an Insured Location that involves interdependency at one or more other Insured Locations, the loss, including any resulting interdependency loss, will be adjusted based on the Time Element coverage that applies at the Insured Location where the physical loss or damage insured by this Policy occurred.



**1263**
**ARM**

## MARKET REFORM CONTRACT

UMR: B1263EW0004816

### LOSS ADJUSTMENT AND SETTLEMENT - SECTION E

### LOSS ADJUSTMENT/PAYABLE

Loss, if any, will be adjusted with and payable to the Insured, or as may be directed by the Insured. Additional insured interests will also be included in loss payment as their interests may appear when named as additional named insured, lender, mortgagee and/or loss payee in the Certificates of Insurance on file with the Underwriters or named below.

### CURRENCY FOR LOSS PAYMENT

All amounts, including deductibles and limits of liability, indicated in this Policy are in the currency of the United States of America. Losses will be adjusted and paid in the currency of the United States of America.

### VALUATION

Adjustment of the physical loss amount under this Policy will be computed as of the date of loss at the location of the loss, and for no more than the interest of the Insured, subject to the following:

A.  On stock in process, the value of raw materials and labor expended plus the proper proportion of overhead charges.

B.  On finished goods manufactured by the Insured, the regular cash selling price at the Location where the loss happens, less all discounts and charges to which the finished goods would have been subject had no loss happened.

C.  On raw materials, supplies and other merchandise not manufactured by the Insured:

   1.  if repaired or replaced, the actual expenditure incurred in repairing or replacing the damaged or destroyed property; or

   2.  if not repaired or replaced, the Actual Cash Value.

D.  On exposed films, records, manuscripts and drawings that are not Valuable Papers and Records, the value blank plus the cost of copying information from back-up or from originals of a previous generation. These costs will not include research, engineering or any costs of restoring or recreating lost information.

E.  On property covered under Deferred Payments, the lesser of the:

   1.  total amount of unpaid installments less finance charges.

   2.  Actual Cash Value of the property at the time of loss.

   3.  cost to repair or replace with material of like size, kind and quality.

F.  On Fine Arts articles, the lesser of:

   1.  the reasonable and necessary cost to repair or restore such property to the physical condition that existed on the date of loss.

   2.  cost to replace the article.

   3.  the value, if any, stated on a schedule on file with the Underwriters.



**1263
ARM**

## MARKET REFORM CONTRACT

UMR: B1263EW0004816

In the event a Fine Arts article is part of a pair or set, and a physically damaged article cannot be replaced, or repaired or restored to the condition that existed immediately prior to the loss, the Underwriters will be liable for the lesser of the full value of such pair or set or the amount designated on the schedule.  The Insured agrees to surrender the pair or set to the Underwriters.

G.  On Valuable Papers And Records, the lesser of the following:

    1.  The cost to repair or restore the item to the condition that existed immediately prior to the loss.

    2.  The cost to replace the item.

    3.  The amount designated for the item on the schedule on file with the Underwriters.

H.  On property in transit:

    1.  Property shipped to or for the account of the Insured will be valued at actual invoice to the Insured. Included in the value are accrued costs and charges legally due.  Charges may include the Insured's commission as selling agent.

    2.  Property sold by the Insured and shipped to or for the purchaser's account will be valued at the Insured's selling invoice amount.  Prepaid or advanced freight costs are included.

    3.  Property not under invoice will be valued:

        (a)  for property of the Insured, at the valuation provisions of this Policy applying at the location from which the property is being transported; or

        (b)  for other property, at the actual cash market value at the destination point on the date of Occurrence,

    less any charges saved which would have become due and payable upon arrival at destination.

I.  On all other property, the loss amount will not exceed the lesser of the following:

    1.  All with due diligence and dispatch

        (a)  the cost to repair

        (b)  the cost to rebuild or replace on the same site with new materials of like size, kind and quality

        (c)  the cost in rebuilding, repairing or replacing on the same or another site, but not to exceed the size and operating capacity that existed on the date of loss.

        (d)  the cost to replace unrepairable electrical or mechanical equipment, including computer equipment, with equipment that is the most functionally equivalent to that damaged or destroyed, even if such equipment has technological advantages and/or represents an improvement in function and/or forms part of a program of system enhancement.

    2.  The selling price of real property or machinery and equipment, other than stock, offered for sale on the date of loss.

    3.  The increased cost of demolition, if any, resulting from loss covered by this Policy, if such property is scheduled for demolition.





**1263
ARM**

## MARKET REFORM CONTRACT

UMR: B1263EW0004816

4.  The unamortized value of improvements and betterments, if such property is not repaired or replaced at the Insured's expense.

5.  The Actual Cash Value if such property is:

    (a) useless to the Insured; or

    (b) not repaired, replaced or rebuilt on the same or another site within two years from the date of loss.

The Insured may elect not to repair or replace the insured real and/or personal property lost, damaged or destroyed.  Loss settlement may be elected on the lesser of repair or replacement cost basis if the proceeds of such loss settlement are expended on other capital expenditures related to the Insured's operations within 2 (two) years from the date of loss.  As a condition of collecting under this item, such expenditure must be unplanned as of the date of loss and be made at an Insured Location under this Policy.  This item does not extend to Demolition And Increased Cost Of Construction.

The term Actual Cash Value wherever used in this Policy means the amount it would cost to repair or replace insured property, on the date of loss, with material of like kind and quality, with proper deduction for obsolescence and physical depreciation.

### LOSS CONDITIONS

#### REQUIREMENTS IN CASE OF LOSS

The Insured will:

1.  give immediate written notice to the Underwriters of any loss.

2.  protect the property from further loss or damage.

3.  promptly separate the damaged and undamaged property; put it in the best possible order; and furnish a complete inventory of the lost, destroyed, damaged and undamaged property showing in detail the quantities, costs, Actual Cash Value, replacement value and amount of loss claimed.

4.  give a signed and sworn proof of loss to the Underwriters within 90 (ninety) days after the loss, unless that time is extended in writing by the Underwriters.  The proof of loss must state the knowledge and belief of the Insured as to:

    (a) the time and origin of the loss.

    (b) the Insured's interest and that of all others in the property.

    (c) the Actual Cash Value and replacement value of each item and the amount of loss to each item; all encumbrances; and all other contracts of insurance, whether valid or not, covering any of the property.

    (d) any changes in the title, use, occupation, location, possession or exposures of the property since the effective date of this Policy.

    (e) by whom and for what purpose any location insured by this Policy was occupied on the date of loss, and whether or not it then stood on leased ground.





**1263
ARM**

### MARKET REFORM CONTRACT

UMR: B1263EW0004816

5.  include a copy of all the descriptions and schedules in all policies and, if required, provide verified plans and specifications of any buildings, fixtures, machinery or equipment destroyed or damaged.

6.  further, the Insured, will as often as may be reasonably required:

    (a)  exhibit to any person designated by the Underwriters all that remains of any property;

    (b)  submit to examination under oath by any person designated by the Underwriters and sign the written records of examinations; and

    (c)  produce for examination at the request of the Underwriters:

        (i)  all books of accounts, business records, bills, invoices and other vouchers; or

        (ii)  certified copies if originals are lost,

        at such reasonable times and places that may be designated by the Underwriters or their representative and permit extracts and machine copies to be made.

#### UNDERWRITERS' OPTION

The Underwriters have the option to take all or any part of damaged property at the agreed or appraised value. The Underwriters must give notice to the Insured of their intention to do so within 30 (thirty) days after receipt of proof of loss.

#### ABANDONMENT

There may be no abandonment of any property to the Underwriters.

#### SUBROGATION

The Insured is required to cooperate in any subrogation proceedings.  The Underwriters may require from the Insured an assignment or other transfer of all rights of recovery against any party for loss to the extent of the Underwriters' payment.

The Underwriters will not acquire any rights of recovery that the Insured has expressly waived prior to a loss, nor will such waiver affect the Insured's rights under this Policy.

Any recovery from subrogation proceedings, less costs incurred by the Underwriters in such proceedings, will be payable to the Insured in the proportion that the amount of:

1.  any applicable deductible; and/or

2.  any provable uninsured loss,

bears to the entire provable loss amount.

#### ARBITRATION

If the Insured and the Underwriters fail to agree in whole or in part regarding any aspect of this Policy, each party shall, within 10 (ten) days after the demand in writing by either party, appoint a competent and disinterested arbitrator and the two chosen shall before commencing the arbitration select a competent and disinterested umpire. The arbitrators together shall determine such matters in which the Insured and the



**1263**
**ARM**

## MARKET REFORM CONTRACT

UMR: B1263EW0004816

Underwriters shall so fail to agree and shall make an award thereon, and if they fail to agree, they will submit their differences to the umpire and the award in writing of any two, duly verified, shall determine the same.

The Parties to such arbitration shall pay the arbitrators respectively appointed by them and bear equally the expenses of the arbitration and the charges of the umpire.

### SUIT AGAINST THE UNDERWRITERS

No suit, action or proceeding for the recovery of any claim will be sustained in any court of law or equity unless:

1. the Insured has fully complied with all the provisions of this Policy; and

2. legal action is started within 12 (twelve) months after inception of the loss.

If under the insurance laws of the jurisdiction in which the property is located, such 12 (twelve) months' limitation is invalid, then any such legal action needs to be started within the shortest limit of time permitted by such laws.

### SETTLEMENT OF CLAIMS

The amount of loss, except for Accounts Receivable coverage, for which the Underwriters may be liable will be paid within 30 (thirty) days after:

A. proof of loss as described in this Policy is received by the Underwriters; and

B. when a resolution of the amount of loss is made either by:

    1. written agreement between the Insured and the Underwriters; or

    2. the filing with the Underwriters of an award as provided in the Arbitration clause of this section.

### COLLECTION FROM OTHERS

The Underwriters will not be liable for any loss to the extent that the Insured has collected for such loss from others.

### PARTIAL PAYMENT OF LOSS SETTLEMENT

In the event of a loss occurring which has been ascertained to be insured loss or damage under this Policy and determined by the Underwriters' representatives to be in excess of the applicable Policy deductible, the Underwriters will advance mutually agreed upon partial payment(s) on the insured loss or damage, subject to the Policy's provisions. To obtain said partial payments, the Insured will submit a signed and sworn Proof of Loss as described in this Policy, with adequate supporting documentation.

### CHOICE OF LAW

This Policy shall be subject to the applicable state law to be determined by the court of competent jurisdiction as determined by the provisions of the Service of Suit clause within this Policy.





**1263**
**ARM**

## MARKET REFORM CONTRACT

UMR: B1263EW0004816

### SERVICE OF SUIT

This Service of Suit clause will not be read to conflict with or override the obligations of the parties to arbitrate their disputes as provided for in any Arbitration clause within this Policy.  This clause is intended as an aid to compelling arbitration or enforcing such arbitral award, not as an alternative to such Arbitration clause for resolving disputes arising out of this contract of insurance.

It is agreed that in the event of the failure of the Underwriters hereon to pay any amount claimed to be due hereunder, the Underwriters hereon, at the request of the Insured, will submit to the jurisdiction of a Court of competent jurisdiction within the United States.  Nothing in this Clause constitutes or should be understood to constitute a waiver of the Underwriters' rights to commence an action in any Court of competent jurisdiction in the United States, to remove an action to a United States District Court, or to seek a transfer of a case to another Court as permitted by the laws of the United States or of any State in the United States.

It is further agreed that service of process in such suit may be made upon the person or persons specified in the Schedule for this purpose, and that in any suit instituted against any one of them upon this contract, the Underwriters will abide by the final decision of such Court or of any Appellate Court in the event of an appeal.

The person or persons specified in the Schedule are authorised and directed to accept service of process on behalf of the Underwriters in any such suit and/or upon the request of the Insured to give a written undertaking to the Insured that they will enter a general appearance upon the Underwriters' behalf in the event such a suit shall be instituted.

Further, pursuant to any statute of any State, territory or district of the United States which makes provision therefor, the Underwriters hereon hereby designate the Superintendent, Commissioner or Director of Insurance or other officer specified for that purpose in the statute, or his successor or successors in office, as their true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted by or on behalf of the Insured or any beneficiary hereunder arising out of this contract of insurance, and hereby designate the above-named as the person to whom the said officer is authorized to mail such process or a true copy thereof.

### GENERAL PROVISIONS - SECTION F

### ADDITIONAL INSURABLE INTERESTS/CERTIFICATES OF INSURANCE

Additional insured interests are automatically added to this Policy as their interest may appear when named as additional named insured, lender, mortgagee and/or loss payee in the Certificates of Insurance on a schedule on file with the Underwriters.  Such interests become effective on the date shown in the Certificate of Insurance and will not amend, extend or alter the terms, conditions, provisions, exclusions and limits of liability of this Policy.

### CANCELLATION

This Policy may be:

A.  canceled at any time at the request of the Insured by surrendering this Policy to the Underwriters or by giving written notice to the Underwriters stating when such cancellation will take effect; or

B.  canceled by the Underwriters by giving the Insured not less than:

    1.  90 (ninety) days' written notice of cancellation; or

    2.  ~~10 (ten) days' written notice of cancellation if the Insured fails to remit, when due, payment of premium for this Policy.~~ **Premium Payment Terms Stated in Section I Risk Details to apply.**



**1263**
**ARM**

## MARKET REFORM CONTRACT

### UMR: B1263EW0004816

Return of any unearned premium will be calculated on the customary short rate basis if the Insured cancels and on a pro-rata basis if the Underwriters cancel this Policy. Return of any unearned premium will be made by the Underwriters as soon as practicable.

### INSPECTIONS

The Underwriters, at all reasonable times, will be permitted, but will not have the duty, to inspect insured property.

The Underwriters':

A.  right to make inspections;

B.  making of inspections; or

C.  analysis, advice or inspection report,

will not constitute an undertaking, on behalf of or for the benefit of the Insured or others, to determine or warrant that the insured property is safe or healthful. The Underwriters will have no liability to the Insured or any other person because of any inspection or failure to inspect.

### ACCESS TO RECORDS

The Insured shall make available to the Underwriters at all reasonable times, and the Underwriters through their designated representatives shall have the right to inspect and copy at their own expense, during the period of this Policy and thereafter, all books, papers and other records of the Insured and its agents or brokers in connection with this Policy or the subject matter hereof.

### PROVISIONS APPLICABLE TO SPECIFIC JURISDICTIONS

Any terms of this Policy which may conflict with applicable statutes (or statutes deemed applicable by a court of competent jurisdiction) are amended to conform with the minimum requirements of such statutes.

### MISREPRESENTATION AND FRAUD

This entire Policy will be void if, whether before or after a loss, an Insured has:

A.  willfully concealed or misrepresented any material fact or circumstance concerning this insurance, the subject thereof, any insurance claim, or the interest of an Insured.

B.  made any attempt to defraud the Underwriters.

C.  made any false swearing.

### LENDERS LOSS PAYEE AND MORTGAGEE INTERESTS AND OBLIGATIONS

A.  The Underwriters will pay for loss to specified Property Insured under this Policy to each specified Lender Loss Payee (hereinafter referred to as Lender) as its interest may appear, and to each specified Mortgagee as its interest may appear, under all present or future mortgages upon such property, in order of precedence of the mortgages.

31.10-16



**1263
ARM**

### MARKET REFORM CONTRACT

UMR: B1263EW0004816

B. The interest of the Lender or Mortgagee (as the case may be) in Property Insured under this Policy will not be invalidated by:

   1.  any act of neglect of the debtor, mortgagor, or owner (as the case may be) of the property.

   2.  foreclosure, notice of sale, or similar proceedings with respect to the property.

   3.  change in the title or ownership of the property.

   4.  change to a more hazardous occupancy.

   The Lender or Mortgagee will notify the Underwriters of any known change in ownership, occupancy, or hazard and, within 10 (ten) days of written request by the Underwriters, may pay the increased premium associated with such known change.  If the Lender or Mortgagee fails to pay the increased premium, all coverage under this Policy will cease.

C. If this Policy is canceled at the request of the Insured or its agent, the coverage for the interest of the Lender or Mortgagee will terminate 10 (ten) days after the Underwriters send to the Lender or Mortgagee written notice of cancellation, unless:

   1.  sooner terminated by authorization, consent, approval, acceptance, or ratification of the Insured's action by the Lender or Mortgagee, or its agent.

   2.  this Policy is replaced by the Insured, with a policy providing coverage for the interest of the Lender or Mortgagee, in which event coverage under this Policy with respect to such interest will terminate as of the effective date of the replacement policy, notwithstanding any other provision of this Policy.

D. The Underwriters may cancel this Policy and/or the interest of the Lender or Mortgagee under this Policy, by giving the Lender or Mortgagee written notice 90 (ninety) days prior to the effective date of cancellation, if cancellation is for any reason other than non-payment.  If the debtor, mortgagor, or owner has failed to pay any premium due under this Policy, the Underwriters may cancel this Policy for such non-payment, but will give the Lender or Mortgagee written notice 10 (ten) days prior to the effective date of cancellation.  If the Lender or Mortgagee fails to pay the premium due by the specified cancellation date, all coverage under this Policy will cease.

E. The Underwriters have the right to invoke this Policy's Suspension clause.  The suspension of insurance will apply to the interest of the Lender or Mortgagee in any machine, vessel, or part of any machine or vessel, subject to the suspension.  The Underwriters will provide the Lender or Mortgagee at the last known address a copy of the suspension notice.

F. If the Underwriters pay the Lender or Mortgagee for any loss, and denies payment to the debtor, mortgagor or owner, the Underwriters will, to the extent of the payment made to the Lender or Mortgagee be subrogated to the rights of the Lender or Mortgagee under all securities held as collateral to the debt or mortgage.  No subrogation will impair the right of the Lender or Mortgagee to sue or recover the full amount of its claim.  At its option, the Underwriters may pay to the Lender or Mortgagee the whole principal due on the debt or mortgage plus any accrued interest.  In this event, all rights and securities will be assigned and transferred from the Lender or Mortgagee to the Underwriters, and the remaining debt or mortgage will be paid to the Underwriters.

G. If the Insured fails to render proof of loss, the Lender or Mortgagee, upon notice of the Insured's failure to do so, will render proof of loss within 60 (sixty) days of notice and will be subject to the provisions of this Policy relating to Arbitration, Settlement Of Claims, and Service Of Suit.

H. Other provisions relating to the interests and obligations of the Lender or Mortgagee may be added to

**1263**
**ARM**



### MARKET REFORM CONTRACT

UMR: B1263EW0004816

this Policy by agreement in writing.

### OTHER INSURANCE

A. If there is any other insurance that would apply in the absence of this Policy, this Policy will apply only after such insurance whether collectible or not.

B. The Insured is permitted to have other insurance over any limits or sublimits of liability specified elsewhere in this Policy without prejudice to this Policy. The existence of any such insurance will not reduce any limit or sublimit of liability in this Policy. Any other insurance that would have provided primary coverage in the absence of this Policy will not be considered excess.

C. The Insured is permitted to have other insurance for all, or any part, of any deductible in this Policy. The existence of such other insurance will not prejudice recovery under this Policy. If the limits of liability of such other insurance are greater than this Policy's applicable deductible, this Policy's insurance will apply only after such other insurance has been exhausted.

D. In the event this Policy is deemed to contribute with other insurance, the limit of liability applicable at each Location, for purposes of such contribution with other insurers, will be the latest amount described in this Policy or the latest Location value on file with the Underwriters, whichever is applicable.

### POLICY MODIFICATION

The Insured and the Underwriters may request changes to this Policy. This Policy can be changed only by endorsements issued by the Underwriters and made a part of this Policy.

Notice to any agent or knowledge possessed by any agent or by any other person will not:

A. create a waiver, or change any part of this Policy; or

B. prevent the Underwriters from asserting any rights under the provisions of this Policy.

### REDUCTION BY LOSS

Claims paid under this Policy will not reduce the Policy limit of liability, except claims paid will reduce any Aggregate Limit of Liability for the Period of Insurance.

### SUSPENSION

On discovery of a dangerous condition, the Underwriters may immediately suspend this insurance on any machine, vessel or part thereof by giving written notice to the Insured. The suspended insurance may be reinstated by the Underwriters. Any unearned premium resulting from such suspension will be returned by the Underwriters.

### SALVAGE AND RECOVERIES

All salvages, recoveries and payments recovered or received subsequent to a loss settlement under this Policy shall be applied as if recovered or received prior to the said settlement and all necessary adjustments shall be made by the parties hereto.





**1263**
**ARM**

### MARKET REFORM CONTRACT

UMR: B1263EW0004816

---

### TITLES

The titles in this Policy are only for reference.  The titles do not in any way affect the provisions of this Policy.

29/3/07
LMA3033
Form approved by Lloyd's Market Association



**1263
ARM**

**MARKET REFORM CONTRACT**

UMR: B1263EW0004816

<u>SECTION VIII – SUPPLEMENTAL CLAUSES</u>

**Notwithstanding anything to the contrary contained herein, it is understood and agreed that this insurance is subject to the following clauses which are attached hereto:-**

No.1    NMA2340 Seepage And/or Pollution And/or Contamination Exclusion

No.2    Radioactive Contamination Exclusion Clause - Physical Damage – Direct N.M.A.1191

No.3    War and Terrorism Exclusion Endorsement - NMA2918

No.4    U.S. Terrorism Risk Insurance Act of 2002 as Amended New & Renewal Business Endorsement LMA5218

No.5    Fraudulent Conduct and Misrepresentation Clause - LMA5120

No.6    Application of Sublimits Endorsement - LMA5130

No.7    Sanction Limitation and Exclusion Clause – LMA3100

No.8:  Surplus Lines Notice



 ALESCO

**1263**
**ARM**

### MARKET REFORM CONTRACT

UMR: B1263EW0004816

**No.1**

**U.S.A. & CANADA**

LAND, WATER AND AIR EXCLUSION

Notwithstanding any provision to the contrary within the Policy of which this Endorsement forms part (or within any other Endorsement which forms part of this Policy), this Policy does not insure land (including but not limited to land on which the insured property is located), water or air, howsoever and wherever occurring, or any interest or right therein.

SEEPAGE AND/OR POLLUTION AND/OR CONTAMINATION EXCLUSION

Notwithstanding any provision to the contrary within the Policy of which this Endorsement forms part (or within any other Endorsement which forms part of this Policy), this Policy does not insure:

(a) any loss, damage, cost or expense, or

(b) any increase in insured loss, damage, cost or expense, or

(c) any loss, damage, cost, expense, fine or penalty, which is incurred, sustained or imposed by order, direction, instruction or request of, or by any agreement with, any court, government agency or any public, civil or military authority, or threat thereof, (and whether or not as a result of public or private litigation),

which arises from any kind of seepage or any kind of pollution and/or contamination, or threat thereof, whether or not caused by or resulting from a peril insured, or from steps or measures taken in connection with the avoidance, prevention, abatement, mitigation, remediation, clean-up or removal of such seepage or pollution and/or contamination or threat thereof.

The term "any kind of seepage or any kind of pollution and/or contamination" as used in this Endorsement includes (but is not limited to):

(a) seepage of, or pollution and/or contamination by, anything, including but not limited to, any material designated as a "hazardous substance" by the United States Environmental Protection Agency or as a "hazardous material" by the United States Department of Transportation, or defined as a "toxic substance" by the Canadian Environmental Protection Act for the purposes of Part II of that Act, or any substance designated or defined as toxic, dangerous, hazardous or deleterious to persons or the environment under any other Federal, State, Provincial, Municipal or other law, ordinance or regulation; and

(b) the presence, existence, or release of anything which endangers or threatens to endanger the health, safety or welfare of persons or the environment.

DEBRIS REMOVAL ENDORSEMENT

THIS ENDORSEMENT CONTAINS PROVISIONS WHICH MAY LIMIT OR PREVENT RECOVERY UNDER THIS POLICY FOR LOSS WHERE COSTS OR EXPENSES FOR DEBRIS REMOVAL ARE INCURRED.

Nothing contained in this Endorsement shall override any Seepage and/or Pollution and/or Contamination Exclusion or any Radioactive Contamination Exclusion or any other Exclusion applicable to this Policy.



 ALESCO

**1263
ARM**

**MARKET REFORM CONTRACT**

UMR: B1263EW0004816

Any provision within this Policy (or within any other Endorsement which forms part of this Policy) which insures debris removal is cancelled and replaced by the following:

1.  In the event of direct physical damage to or destruction of property, for which Underwriters hereon agree to pay, or which but for the application of a deductible or underlying amount they would agree to pay (hereinafter referred to as "Damage or Destruction"), this Policy also insures, within the Sum Insured, subject to the limitations and method of calculation below, and to all the other terms and conditions of the Policy, costs or expenses;

    (a)  which are reasonably and necessarily incurred by the Assured in the removal, from the premises of the Assured at which the Damage or Destruction occurred, of debris which results from the Damage or Destruction; and

    (b)  of which the Assured becomes aware and advises the amount thereof to Underwriters hereon within one year of the commencement of such Damage or Destruction.

2.  In calculating the amount, if any, payable under this Policy for loss where costs or expenses for removal of debris are incurred by the Assured (subject to the limitations in paragraph 1 above):

    (a)  the maximum amount of such costs or expenses that can be included in the method of calculation set out in (b) below shall be USD 1,000,000 of the amount of the Damage or Destruction from which such costs or expenses result; and

    (b)  the amount of such costs or expenses as limited in (a) above shall be added to:

        (i)  the amount of the Damage or Destruction; and

        (ii)  all other amounts of loss, which arise as a result of the same occurrence, and for which Underwriters hereon also agree to pay, or which but for the application of a deductible or underlying amount they would agree to pay; and

        the resulting sum shall be the amount to which any deductible or underlying amount to which this Policy is subject and the limit (or applicable sub-limit) of this Policy, shall be applied.

24/11/88
NMA2340

All other terms and conditions remain unaltered.





**1263**
**ARM**

### MARKET REFORM CONTRACT

UMR: B1263EW0004816

**No.2**

**U.S.A.**

**RADIOACTIVE CONTAMINATION EXCLUSION CLAUSE -
PHYSICAL DAMAGE - DIRECT**

(Approved by Lloyd's Underwriters' Non-Marine Association)

This policy does not cover any loss or damage arising directly or indirectly from nuclear reaction nuclear radiation or radioactive contamination however such nuclear reaction nuclear radiation or radioactive contamination may have been caused * NEVERTHELESS if Fire is an insured peril and a Fire arises directly or indirectly from nuclear reaction nuclear radiation or radioactive contamination any loss or damage arising directly from that Fire shall (subject to the provisions of this policy) be covered EXCLUDING however all loss or damage caused by nuclear reaction nuclear radiation or radioactive contamination arising directly or indirectly from that Fire.

*NOTE. - If Fire is not an insured peril under this policy the words "NEVERTHELESS" to the end of the clause do not apply and should be disregarded.

7/5/59
N.M.A. 1191



 ALESCO

**1263**
**ARM**

### MARKET REFORM CONTRACT

UMR: B1263EW0004816

No.3

### WAR AND TERRORISM EXCLUSION ENDORSEMENT

Notwithstanding any provision to the contrary within this insurance or any endorsement thereto it is agreed that this insurance excludes loss, damage, cost or expense of whatsoever nature directly or indirectly caused by, resulting from or in connection with any of the following regardless of any other cause or event contributing concurrently or in any other sequence to the loss;

1.  war, invasion, acts of foreign enemies, hostilities or warlike operations (whether war be declared or not), civil war, rebellion, revolution, insurrection, civil commotion assuming the proportions of or amounting to an uprising, military or usurped power; or

2.  any act of terrorism.

    For the purpose of this endorsement an act of terrorism means an act, including but not limited to the use of force or violence and/or the threat thereof, of any person or group(s) of persons, whether acting alone or on behalf of or in connection with any organisation(s) or government(s), committed for political, religious, ideological or similar purposes including the intention to influence any government and/or to put the public, or any section of the public, in fear.

This endorsement also excludes loss, damage, cost or expense of whatsoever nature directly or indirectly caused by, resulting from or in connection with any action taken in controlling, preventing, suppressing or in any way relating to 1 and/or 2 above.

If the Underwriters allege that by reason of this exclusion, any loss, damage, cost or expense is not covered by this insurance the burden of proving the contrary shall be upon the Assured.

In the event any portion of this endorsement is found to be invalid or unenforceable, the remainder shall remain in full force and effect.

### ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED

NMA2918



 ALESCO

**1263**
**ARM**

## MARKET REFORM CONTRACT

UMR: B1263EW0004816

No.4

### U.S. TERRORISM RISK INSURANCE ACT OF 2002 AS AMENDED
### NEW & RENEWAL BUSINESS ENDORSEMENT

*This Endorsement is issued in accordance with the terms and conditions of the "U.S. Terrorism Risk Insurance Act of 2002" as amended, as summarized in the disclosure notice.*

In consideration of an additional premium stated in Section 1 – Risk Details, it is hereby noted and agreed with effect from inception that the Terrorism exclusion to which this Insurance is subject, shall not apply to any "insured loss" directly resulting from any "act of terrorism" as defined in the "U.S. Terrorism Risk Insurance Act of 2002", as amended ("TRIA").

The coverage afforded by this Endorsement is only in respect of any "insured loss" of the type insured by this Insurance directly resulting from an "act of terrorism" as defined in TRIA. The coverage provided by this Endorsement shall expire at 12:00 midnight December 31, 2020, the date on which the TRIA Program is scheduled to terminate, or the expiry date of the policy whichever occurs first, and shall not cover any losses or events which arise after the earlier of these dates. The Terrorism exclusion, to which this Insurance is subject, applies in full force and effect to any other losses and any act or events that are not included in said definition of "act of terrorism".

This Endorsement only affects the Terrorism exclusion to which this Insurance is subject. All other terms, conditions, insured coverage and exclusions of this Insurance including applicable limits and deductibles remain unchanged and apply in full force and effect to the coverage provided by this Insurance.

Furthermore the Underwriter(s) will not be liable for any amounts for which they are not responsible under the terms of TRIA (including subsequent action of Congress pursuant to the Act) due to the application of any clause which results in a cap on the Underwriter's liability for payment for terrorism losses.

LMA5218
12 January 2015





**1263
ARM**

## MARKET REFORM CONTRACT

UMR: B1263EW0004816

No.5

### FRAUDULENT CONDUCT AND MISREPRESENTATION CLAUSE

The entire Contract of Insurance and any loss or claim thereunder will be void if, whether before or after a loss, an Insured has:

a.   intentionally concealed or Intentionally misrepresented any material fact or circumstance;

b.   engaged in fraudulent conduct; or

c.   made false statements;

relating to the Contract of Insurance or any loss or claim thereunder.

In the event that any provision of this clause is found by a court of competent jurisdiction to be invalid or unenforceable, the other provisions of this clause and the remainder of the provision in question shall not be affected thereby and shall remain in full force and effect.

LMA5120
19 November 2008

**ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED**





**1263**
**ARM**

### MARKET REFORM CONTRACT

UMR: B1263EW0004816

**No.6**

### APPLICATION OF SUBLIMITS ENDORSEMENT

1.  **Application To Insured Interests.** Each sublimit stated in this policy applies as part of, and not in addition to, the overall policy limit for an occurrence insured hereunder. Each sublimit is the maximum amount potentially recoverable from all insurance layers combined for all insured loss, damage, expense, time element or other insured interest arising from or relating to that aspect of the occurrence, including but not limited to type of property, construction, geographic area, zone, location, or peril.

2.  **Application Within Perils.** If insured under this policy, any sublimit for earthquake, earth movement, flood, windstorm, named storm, or named windstorm is the maximum amount potentially recoverable from all insurance layers combined for all insured loss, damage, expense, time element or other insured interest arising from or relating to such an occurrence. If flood occurs in conjunction with a windstorm, named storm, named windstorm, earthquake or earth movement, the flood sublimit applies within and erodes the sublimit for that windstorm, named storm, named windstorm, earthquake or earth movement.

    This endorsement takes precedence over and, if in conflict with any other wording in the contract bearing on the application of sublimits, replaces that wording.

    LMA5130
    5 March 2009

**No.7**

### SANCTION LIMITATION AND EXCLUSION CLAUSE

No (re)insurer shall be deemed to provide cover and no (re)insurer shall be liable to pay any claim or provide any benefit hereunder to the extent that the provision of such cover, payment of such claim or provision of such benefit would expose that (re)insurer to any sanction, prohibition or restriction under United Nations resolutions or the trade or economic sanctions, laws or regulations of the European Union, United Kingdom or United States of America.

LMA3100
15 September 2010



**1263**
**ARM**

## MARKET REFORM CONTRACT

UMR: B1263EW0004816

No. 8

### TEXAS SURPLUS LINES NOTICE

This insurance contract is with an insurer not licensed to transact insurance in this state and is issued and delivered as surplus line coverage under the Texas insurance statutes. The Texas Department of Insurance does not audit the finances or review the solvency of the surplus lines insurer providing this coverage, and the insurer is not a member of the property and casualty insurance guaranty association created under Chapter 462, Insurance Code. Chapter 225, Insurance Code, requires payment of a 4.85% percent tax on gross premium.

LMA9079
01 September 2013



**1263
ARM**

### MARKET REFORM CONTRACT

UMR: B1263EW0004816

**POLICYHOLDER DISCLOSURE
NOTICE OF TERRORISM
INSURANCE COVERAGE**

You are hereby notified that under the Terrorism Risk Insurance Act of 2002, as amended ("TRIA"), that you now have a right to purchase insurance coverage for losses arising out of acts of terrorism, **as defined in Section 102(1) of the Act, as amended:** The term "act of terrorism" means any act that is certified by the Secretary of the Treasury, in consultation with the Secretary of Homeland Security and the Attorney General of the United States, to be an act of terrorism; to be a violent act or an act that is dangerous to human life, property, or infrastructure; to have resulted in damage within the United States, or outside the United States in the case of an air carrier or vessel or the premises of a United States mission; and to have been committed by an individual or individuals, as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion. Any coverage you purchase for "acts of terrorism" shall expire at 12:00 midnight December 31, 2020, the date on which the TRIA Program is scheduled to terminate, or the expiry date of the policy whichever occurs first, and shall not cover any losses or events which arise after the earlier of these dates.

YOU SHOULD KNOW THAT COVERAGE PROVIDED BY THIS POLICY FOR LOSSES CAUSED BY CERTIFIED ACTS OF TERRORISM IS PARTIALLY REIMBURSED BY THE UNITED STATES UNDER A FORMULA ESTABLISHED BY FEDERAL LAW. HOWEVER, YOUR POLICY MAY CONTAIN OTHER EXCLUSIONS WHICH MIGHT AFFECT YOUR COVERAGE, SUCH AS AN EXCLUSION FOR NUCLEAR EVENTS. UNDER THIS FORMULA, THE UNITED STATES PAYS 85% THROUGH 2015; 84% BEGINNING ON JANUARY 1, 2016; 83% BEGINNING ON JANUARY 1, 2017; 82% BEGINNING ON JANUARY 1, 2018; 81% BEGINNING ON JANUARY 1, 2019 AND 80% BEGINNING ON JANUARY 1, 2020; OF COVERED TERRORISM LOSSES EXCEEDING THE STATUTORILY ESTABLISHED DEDUCTIBLE PAID BY THE INSURER(S) PROVIDING THE COVERAGE. YOU SHOULD ALSO KNOW THAT THE TERRORISM RISK INSURANCE ACT, AS AMENDED, CONTAINS A USD100 BILLION CAP THAT LIMITS U.S. GOVERNMENT REIMBURSEMENT AS WELL AS INSURERS' LIABILITY FOR LOSSES RESULTING FROM CERTIFIED ACTS OF TERRORISM WHEN THE AMOUNT OF SUCH LOSSES IN ANY ONE CALENDAR YEAR EXCEEDS USD100 BILLION. IF THE AGGREGATE INSURED LOSSES FOR ALL INSURERS EXCEED USD100 BILLION, YOUR COVERAGE MAY BE REDUCED.

THE PREMIUM CHARGED FOR THIS COVERAGE IS PROVIDED BELOW AND DOES NOT INCLUDE ANY CHARGES FOR THE PORTION OF LOSS COVERED BY THE FEDERAL GOVERNMENT UNDER THE ACT.

| | |
|---|---|
| | I hereby elect to purchase coverage for acts of terrorism for a prospective premium of USD.15,000 ............... |
| | I hereby elect to have coverage for acts of terrorism excluded from my policy. I understand that I will have no coverage for losses arising from acts of terrorism. |

_____
Policyholder/Applicant's Signature

Syndicate on behalf of certain
underwriters at Lloyd's

_____                    _____
Print Name                                                        Policy Number

LMA9104
12 January 2015

# EXHIBIT B

**Letter Invoking Arbitration**



PHELPS DUNBAR
LLP

Louisiana | Mississippi | Texas | Florida | Alabama | North Carolina | London

PAIGE C. JONES
Partner
Admitted in Texas
Mississippi and Oklahoma
(817) 305-0323
jonesp@phelps.com

March 27, 2019

19245-0546

**VIA E-MAIL**

Robert A. Rosin
Rockport Associates I, LLC
555 Skokie Blvd.,  Suite 350
Northbrook, IL  60062
rrosinlaw@ameritech.net

Jeffrey J. Burley
Siebman Forrest
Federal Courthouse Square
300 N. Travis Street
Sherman, Texas  75090
jeffburley@siebman.com

|  | Re: | Named Insured: | Property Risk Services Management, Inc. |
|---|---|---|---|
|  |  | Members: | Rockport Associates, I, LLC |
|  |  |  | Rockport Coastal Care Center |
|  |  | Policy No.: | B1263EW0004816 |
|  |  | Date of Loss: | August 25, 2017 (CAT #1743 – Hurricane Harvey) |
|  |  | Loss Location: | 1004 Young Street, Rockport, Texas 78382 |

Dear Gentlemen:

As you know, we have been retained by Certain Underwriters at Lloyd's subscribing to Policy No. B1263EW0004816 and Sirius International Insurance Corporation UK Branch (collectively, "Insurers") to provide legal advice to them regarding the above-referenced claim. To date, Insurers have issued payments totaling $1,519,415.45. However, only a single check in the amount of $500,000.00 has been negotiated. The remaining checks, which total $1,019,415.45, are, or will soon be, stale.

We understand that the members, Rockport Associates, I, LLC and Rockport Coastal Care Center, have failed to agree regarding the distribution of certain Policy proceeds. Accordingly, Insurers have elected to invoke the Policy's Arbitration Clause for all matters relating to the Policy or the claim, in which two or more of the parties have failed to agree.

March 27, 2019
Page 2

The Policy provides for the binding arbitration as follows:

**LOSS CONDITIONS**

\*\*\*

**ARBITRATION**

If the Insured and Underwriters fail to agree in whole or in part regarding any aspect of this Policy, each party shall, within ten (10) days after the demand in writing by either party, appoint a competent and disinterested arbitrator and the two chosen shall before commencing the arbitration select a competent and disinterested umpire. The arbitrators together shall determine such matters in which the Insured and the Underwriters shall so fail to agree and shall make an award thereon, and if they fail to agree, they will submit their differences to the umpire and the award in writing of any two, duly verified, shall determine the same.

The Parties to such arbitration shall pay the arbitrators respectively appointed by them and bear equally the expenses of the arbitration and the charges of the umpire.

Insurers appoint Andrew Lehrman (https://www.albmlaw.com/Attorney-Profiles/Andrew-J-Lehrman.shtml) to serve as arbitrator as provided in the Policy. Please advise **within ten (10) days** who Rockport Associates, I, LLC and Rockport Coastal Care Center appoint as their arbitrator(s).

Please be advised that Insurers continue to reserve all rights afforded to them under the Policy and Texas law.

We look forward to hearing from you.

Sincerely yours,

PHELPS DUNBAR LLP

*Paige C. Jones*

Paige C. Jones

# **EXHIBIT C**

## **Proposed Order**

**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**CORPUS CHRISTI DIVISION**

| | | |
|---|---|---|
| **ARGO (NO. 604) LIMITED** | § | |
|     **Plaintiff** | § | |
| | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO. _____** |
| | § | |
| | § | |
| **ROCKPORT ASSOCIATES I, LLC; AND** | § | |
| **ROCKPORT COASTAL CARE CENTER** | § | |
|     **Defendants** | § | |

## ORDER TO COMPEL ARBITRATION

**IT IS ORDERED:** The relief sought by Plaintiff, ARGO (NO. 604) Limited (hereinafter "Plaintiff" or "ARGO") in its Original Complaint to Compel Arbitration is granted. Pursuant to the authority granted to this Court under 9 U.S.C. § 206, the parties are hereby directed to proceed with arbitration in accordance with the arbitration agreement found in the insurance policy that underlies the disputes in this matter. Per the arbitration agreement in the subject insurance policy, all parties are further directed to select an arbitrator and advise the other parties of their selection within 10 days of the issuance of this Order.


Date: _____        Signature: _____